William P. HEALY, Plaintiff,

v.

AXELROD CONSTRUCTION COMPANY DEFINED BENEFIT PENSION PLAN AND TRUST, an Employee Benefit Plan; Alexrod Construction Company, an Illinois corporation; Banner Contracting Co., Inc., an Illinois corporation; Estate of Victor Axelrod; and Irwin Axelrod, Individually, Defendants.

No. 91 C 4969.

United States District Court,
N.D. Illinois,
Eastern Division.

June 3, 1994.

Lee P. Polk, Murphy, Smith & Polk, Chicago, IL, for plaintiff.

Robert S. Minetz, Cowan & Minetz, Eugene K. Hollander, Marks, Marks & Kaplan, Chicago, IL, for defendants.

BOBRICK, United States Magistrate Judge.

### ORDER

Before the court is the motion of defendant Irwin Axelrod ("Irwin") to disqualify the law firm of Marks, Marks & Kaplan ("MMK") from defending his cross-claim against his co-defendants, collectively referred to as the "Axelrod Defendants."

### I. FACTS

Plaintiff William Healy ("Healy") has filed a four-count complaint against each of the defendants. Count I makes a claim for benefits under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. Count II alleges a breach of fiduciary duties against the fiduciaries of the Axelrod Construction Company Defined Benefit Pension Plan ("Plan"). Count III alleges illegal discrimination against the plaintiff for the purpose of interfering with the plaintiff's attainment of pension benefits. Count IV sounds in promissory estoppel.

Victor Axelrod was the president and the sole shareholder of Banner Tuckpointing, Banner Contracting, and Axelrod Construction Company. (Complaint, ¶ 15, 18). Irwin Axelrod, Victor's brother, was an employee and officer of Axelrod Construction. (Complaint, ¶ 22). Plaintiff Healy was an employee of Axelrod Construction or its affiliated Banner companies from 1960 to 1991. (Complaint, ¶ 4). On August 1, 1978, the Plan was established to provide pension benefits to employees of Axelrod Construction Company, Banner Tuckpointing, and Banner Contracting. (Complaint, ¶ 7, 11). While Victor and Irwin were both trustees and fiduciaries of the Plan (Complaint, ¶ 20, 22), it was Victor, as president of the employer company, who essentially directed the affairs of the pension plan; Irwin took no more than a passive rule in the company's operations.

Following the establishment of the Plan, Healy and Victor had one or more conversations regarding Healy's participation in the Plan. (Complaint, ¶ 41). At that time, the Internal Revenue Code did not permit an employee to contribute money to an Individual Retirement Account and to participate in an ERISA plan in the same year. (Complaint, ¶ 42). Therefore, Victor allegedly told Healy that because the benefits available under the Plan were not generous, Healy would be better off contributing to his own IRA instead of participating in the Plan. (Complaint, ¶ 41). Following a change in the tax laws in the mid–1980's which allowed an employee to participate in an ERISA plan while making contributions to an IRA account, Healy allegedly told Victor that he wished to participate in the Plan. (Complaint, ¶ 45). In August, 1988, Victor allegedly approached Healy and asked him to sign a waiver of plan participation. (Complaint, ¶ 46). Healy initially declined. (Complaint, ¶ 47). Victor again approached Healy in December, 1988, seeking a waiver. (Complaint, ¶ 48). This time Healy and his wife signed the waiver in January, 1989. (Complaint, ¶ 49).

Victor died on July 30, 1990. (Complaint, ¶ 15). In January, 1991, Healy learned that a large distribution was made to Victor's widow, Blanche, and that another distribution had been made to another Axelrod employee in 1990. (Complaint, ¶ 53, 55). In March of 1991, Healy then wrote Irwin, seeking an accounting of his benefits under the Plan. (Complaint, ¶ 57). Irwin, in turn, approached Attorney Gerald M. Tenner of MMK for legal assistance on the matter. Thereafter, Tenner, of MMK, informed Healy that because of his waiver of participation in the Plan, he accrued no benefits. (Complaint, ¶ 58). Healy then submitted a claim for Plan benefits. (Complaint, ¶ 60). Tenner

again informed Healy that he had waived his rights under the Plan and denied him a hearing regarding review of his claim. (Complaint, ¶ 61–65). In May, 1991, Healy received notice that the Plan would be terminated (Complaint, ¶ 69), and filed the present action.

MMK filed a general appearance and a motion to dismiss on behalf of all defendants, including Irwin. Prior to the filing of the motion to dismiss, attorney Spencer Marks of MMK advised Irwin that MMK would represent him only for the purpose of the motion to dismiss and that if the motion were denied, MMK could no longer represent him due to a conflict. (Marks Affidavit, ¶ 3). Attorney Marks has represented to this court that no client confidences or privileged information were obtained from Irwin during MMK's representation of him. (Marks Affidavit, ¶ 5). The motion to dismiss was denied on March 24, 1992, 787 F.Supp. 838, and MMK terminated its representation of Irwin, but continued its representation of the Axelrod defendants. Irwin's present counsel appeared on his behalf in May, 1992. They filed a motion to dismiss on June 26, 1992, which was denied on August 10, 1992.

Irwin then filed his Answer and Affirmative Defenses, as well as a three-count cross-claim against the Axelrod Defendants on September 18, 1992. Counts I and II of the cross-claim seek indemnity from the Plan based upon various Plan provisions, while Count III seeks common law indemnity. On February 8, 1994, the Axelrod Cross-defendants filed its answer to the cross-claim essentially denying any obligation to reimburse or otherwise indemnity Irwin for the cost associated with the litigation.[1]

In the interim, Irwin, through his counsel, has participated in discovery, has filed a motion for summary judgment, and has attended a number of pre-trial status and settlement hearings. (Response Brief at 2–3). Irwin finally moved to disqualify MMK on October 14, 1993.

In support of his motion, Irwin argues that MMK must be disqualified because his for-

mer attorneys cannot be permitted to take a position adverse to him in the same litigation in which they represented him. In reply, MMK urges that it should not be disqualified because their representation of him was limited, with Irwin's knowledge and consent, to the filing of the motion to dismiss and because Irwin has waived his right to assert the conflict by waiting over a year to move to disqualify MMK.

## II. *PROCESS OF DISQUALIFICATION*

One of the inherent powers of any federal court is the admission and supervision of attorneys practicing before it. *Commonwealth Ins. Co. v. Graphix Hot Line, Inc.*, 808 F.Supp. 1200, 1203 (E.D.Pa.1992). The courts have a vital interest in protecting the integrity of their judgments, maintaining public confidence in the integrity of the bar, eliminating conflicts of interest, and protecting confidential communications between attorneys and their clients. *Id.* To protect these vital interests, a district court has the inherent power to disqualify an attorney from representing a particular client. *Id.* Disqualification is a drastic measure, however, because it deprives one of the litigants of their choice of counsel. *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir.1982). Therefore, it should be cautiously applied, and only when absolutely necessary. *Freeman*, 689 F.2d at 721; *Donohoe v. Consolidated Operating & Prod. Corp.*, 691 F.Supp. 109, 118 (N.D.Ill.1988).

## III. *DISQUALIFICATION*

In this circuit to determine whether an attorney should be disqualified a three-step analysis is required:

> First, we must determine whether a substantial relationship exists between the subject matter of the prior and present representations. If we conclude a substantial relationship does exist, we must next ascertain whether the presumption of shared confidences with respect to the prior representation has been rebutted. If

---

**1.** The late filing of the answer, bringing the cross-claim to issue, was due to extensive settlement efforts by the parties, and the possibility

that MMK might reconsider its position with respect to including Irwin in its defense of the entire claim.

we conclude this presumption has not been rebutted, we must then determine whether the presumption of shared confidences has been rebutted with respect to the present representation. Failure to rebut this presumption would also make the disqualification proper.

*Cromley v. Bd. of Educ. of Lockport H.S.D. 205*, 17 F.3d 1059, 1064 (7th Cir.1994). We turn now to apply this analysis to the case at bar.

## IV. *SUBSTANTIAL RELATIONSHIP*

■ First, we must determine whether a substantial relationship exists between the subject matter of the prior and present representation. We know that Irwin is clearly a former client of MMK, which advised and assisted Irwin at the initial stage of plaintiff's claim. MMK filed an appearance on Irwin's behalf and represented him for the purposes of the motion to dismiss. When that motion was denied, MMK terminated its representation of Irwin, while continuing their representation of the remaining Axelrod defendants (including, incidentally, the Estate of Victor Axelrod, which would be similarly situated to Irwin for conflicts purposes). Therefore, while Irwin no longer has an attorney-client relationship with MMK, the other Axelrod defendants do. Irwin's cross-claim against the Axelrod defendants supplies the requisite adversity between the former and current clients of MMK.

■ Irwin's cross-claim against the Axelrod defendants is substantially related to MMK's prior representation of him. A representation of a former client will be deemed "substantially related" to a current representation if the law firm could have obtained confidential information in the first representation that would be relevant in the second representation, regardless of whether the lawyer obtained or would use a client confidence. *Analytica v. NPD Research, Inc.*, 708 F.2d 1263, 1266 (7th Cir.1983). MMK's current representation of the Axelrod defendants and its former representation of Irwin are part of the same litigation, and therefore are substantially related. *Schiessle v. Stephens*, 717 F.2d 417, 420 (7th Cir.1983). Moreover, Count III seeks indemnity from the Axelrod defendants on an equitable basis relating to the comparative culpability of the defendants. MMK certainly could have obtained confidential information about this during their representation of Irwin by simply asking what he knew about Healy's claim. (It is important to note that the term "confidential information" is not used in the same sense as information covered by the attorney-client relationship). MMK's defense of Irwin's cross-claim is clearly substantially related to their prior representation of him in Healy's action.

Even if this were not the case, we would have difficulty concluding that there was no substantial relationship between MMK's prior representation of Irwin. Both Healy's action and Irwin's cross-claim involve construction and application of the Plan (albeit different provisions of the Plan) and their right to receive benefits provided for them by the Plan. MMK provided legal advice to the Plan at a time when Irwin was the only surviving trustee of the Plan. In fact, an MMK attorney answered Healy's letter to Irwin inquiring about Healy's rights to benefits under the Plan. The record does not suggest that Irwin received any other independent legal advice regarding the administration of the Plan. Irwin apparently relied on MMK to answer the claim for benefits which gave rise to this suit. While it is true that in answering the claim MMK was representing the Plan and not Irwin, an attorney-client relationship need not be formally established to trigger a substantial relationship and the duty of loyalty involving the same or substantially related matters. *Westinghouse Electric Corp. v. Kerr–McGee Corp.*, 580 F.2d 1311, 1319 (7th Cir.1978). Thus the "substantial relationship" test is easily met in this case.

■ MMK tries to avert disqualification by arguing that its representation of Irwin was strictly limited to filing a joint motion to dismiss on behalf of Irwin and the other defendants, and thus there was no substantial relationship. There is no dispute that Irwin was advised by MMK that it would represent him only for the purpose of filing the motion and that if the motion were denied, it could no longer represent him due to

a conflict. (Marks Affidavit, ¶ 3). MMK urges that because the representation was limited with Irwin's knowledge and consent, it may not be disqualified. Without addressing whether the representation could be so limited after MMK represented the Plan at a time when Irwin was the sole surviving trustee, we must conclude that this argument must fail, in any event, because a limited representation was not properly established.

■ The duty of loyalty owed to former clients has found its way into the Rules of Professional Conduct for the Northern District of Illinois ("Rules"), which are modeled after the American Bar Association Model Rules of Professional Conduct. Rule 1.9(a), entitled *Conflict of Interest: Former Client*, details the duty of loyalty owed to a former client:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client, unless the former client consents after disclosure.

The rule against such representations is a prophylactic one serving many purposes. *In re Corn Derivatives Antitrust Litigation*, 748 F.2d 157, 162 (3rd Cir.1984). First, it promotes attorney-client communication by preventing use of client confidences against the client and by alleviating client reluctance to confide completely in their attorneys. *Corn Derivatives*, 748 F.2d at 162. Second, the rule maintains public confidence in the integrity of the bar. *Id.* Third, it fulfills reasonable client expectations about the loyalty of the attorney he has retained to represent him in a particular matter. *Id.* Fourth, it promotes vigorous advocacy, as it removes from the case an attorney who would have to be conscious of preserving a client confidence while cross-examining a former client. *Thomas v. Municipal Court of Antelope Valley*, 878 F.2d 285, 289 (9th Circuit 1989). With this mind, we likewise find Rule 1.2, entitled *Scope of Representation*, provides significant insight into MMK's claim of limited representation. Under Rule 1.2(c), a lawyer may properly limit the scope of his representation of a client. That Rule provides:

> A lawyer may limit the objectives of the representation if the client consents after disclosure.

Exactly what type of "disclosure" is required is not clear from the Rule, but the definition section of the Rules ("Terminology") provides some guidance:

> Disclosure denotes communication of information reasonably sufficient to permit the client to appreciate the significance of the matter in question.

We cannot conclude that the disclosure provided Irwin regarding the scope of his representation by MMK met the standards required to limit the scope of representation.

MMK's disclosure to Irwin fell short in several respects. The record reflects that MMK advised Irwin that it would file the motion to dismiss on his behalf, but that if the motion failed, it could no longer represent him due to a conflict. (Marks Affidavit, ¶ 3). The records does not reflect that it advised him of the nature of the conflict, that it advised him what rights he had against the Plan or other Axelrod co-defendants, or that it advised him that he could forego the conflict by waiving his right to indemnity. Nor was he advised to obtain independent counsel to represent him in this undescribed conflict. Irwin was simply told that if they lost the motion, he was on his own. This is not the kind of "disclosure" contemplated by Rule 1.2(c). Irwin was entitled to a full explanation from his attorneys (and that is what MMK was at that time) about the nature of the conflict and about his rights in the litigation. MMK was obligated to provide this explanation, and having failed to do this, they cannot now claim a limited representation of Irwin so as to establish the lack of a substantial relationship.

### V. PRESUMPTION OF SHARED CONFIDENCES OF PRIOR REPRESENTATION

■ We have earlier recognized that disqualification is not a favored remedy for breaches of ethical rules because it denies the other party the opportunity to be represented by the counsel of its choice. *Freeman*, 689 F.2d at 721. Other remedies, such

as referral to an appropriate disciplinary authority, legal malpractice suits, and nonpayment of legal fees are available to a client aggrieved by his attorney's failure to comply with the disciplinary rules. *SWS Financial Fund A v. Salomon Brothers, Inc.*, 790 F.Supp. 1392, 1400 (N.D.Ill.1992). Nevertheless, disqualification is proper where necessary to prevent the sharing of client confidences. *Freeman*, 689 F.2d at 721.

■ Implicit in a finding of substantial relationship is a presumption that particular individuals in a law firm freely share their client's confidences with one another, however, it is recognized that the presumption that an attorney has knowledge of the confidences and secrets of his firm's clients is rebuttable. *Cromley*, 17 F.3d at 1064; *Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d at 1270–80 (Coffey, J., dissenting); *Freeman*, 689 F.2d at 722 (citing *Novo Terapeutisk Laboratorium v. Baxter Travenol Lab., Inc.*, 607 F.2d 186, 197 (7th Cir.1979).

■ We know there was significant representation by MMK concerning the Axelrod defendants and Irwin that pre-dated the filing of the complaint. *Supra*, at p. 617, 618. This representation later included filing an answer and motions to dismiss in the same or related litigation. We easily conclude that MMK's former representation of Irwin is substantially related to its defense of his cross-claim. In this setting, we need not inquire whether client confidences were actually obtained or whether they were used against the prior client in the later representation. The rebuttable presumption requires a finding that MMK did in fact obtain client confidences and that it shared same. *Cromley*, 17 F.3d at 1064. *See Analytica*, 708 F.2d at 1270–80 (Coffey, J., dissenting). Now it is for MMK to establish that attorneys of MMK did not, in fact, have knowledge of information and confidences of Irwin. Attorney Marks' affidavit, to the contrary, is unavailing because he shows no credible or reliable proof that he had no knowledge of the information or confidences related by Irwin in MMK defenses imposed in the law suit. MMK now represents a client whose interests are adverse to its former client, Irwin, in a matter substantially related to its former representation of Irwin.

■ The attorneys of MMK who represented Irwin currently represents the Axelrod defendants in the claim made against both parties. We now have Irwin's cross-claim against the Axelrod defendants. In this setting, MMK has produced no proof, nor could they, that they had no knowledge of information and confidences of Irwin, as they proceed in their representation and defense of their client against Irwin's cross-claim. As such, we find MMK is not able to rebut the "presumption of shared confidences." Under the three-part analysis stated in *Cromley*, we must now examine whether MMK has rebutted the presumption of shared confidences with respect to the present representation.

## VI. SHARED CONFIDENCES IN PRESENT REPRESENTATION

■ The presumption of shared confidences can be rebutted by demonstrating that "specific institutional mechanisms" (*e.g.* "Chinese Walls") have been implemented to effectively insulate against any flow of confidential information. *Cromley*, 17 F.3d at 1065 (*citing Schiessle*, 717 F.2d at 421). It is incumbent upon the attorney or firm opposing disqualification to establish that adequate screening procedures were timely employed. *Id.* The attorneys in question must affirm such employment under oath. *Id.* In this case, we cannot find that MMK has established an effective screening procedure to block any of Irwin's disclosures to MMK attorneys from those involved in the defense against Irwin's cross-claims. MMK's failure to make such a showing leaves the presumption of shared confidences unrebutted in this case.

## VII. DISQUALIFICATION

■ Our conclusion, under the three-step analysis, in determining whether MMK should be disqualified from defendant Irwin's cross-claim leads inescapably to the conclusion that MMK should be disqualified. The evidence in this case established a substantial relationship between MMK's prior representation of Irwin and its defense of his cross-

claim. Further, shared confidences between Irwin and MMK also existed. We find that the duty of loyalty MMK owes to its former client, Irwin, requires that it not be allowed to take a position adverse to him in this litigation. Even if MMK had properly created a limited representation—which it clearly did not—MMK would not be saved from disqualification since all elements under *Cromley* for disqualification have been met. Therefore, MMK must be disqualified from representing any of the Axelrod defendants in defending Irwin's cross-claim.

## VIII. *TIMELINESS OF IRWIN'S MOTION TO DISQUALIFY*

MMK also resists disqualification by characterizing Irwin's motion as untimely. A motion to disqualify may be waived if it is not filed promptly. *Cox v. American Cast Iron Pipe Co.*, 847 F.2d 725, 729 (11th Cir. 1988). Requiring that a motion be timely filed serves two important functions: first, it curbs the potential for abuse of disqualification motions as a harassing or delaying tactic, *Commonwealth Ins. Co. v. Graphix Hot Line, Inc.*, 808 F.Supp. 1200, 1208 (E.D.Pa. 1992); and second, it reduces the detriment to the other party's case. *Warpar Mfg. Corp. v. Ashland Oil, Inc.*, 606 F.Supp. 852, 858 (N.D.Ohio 1984). Irwin early on requested representation or indemnity of his co-defendants. MMK delayed for a considerable period of time in stating its intention not to represent Irwin. Irwin then timely filed his cross-claim to move to disqualify MMK. This was the reason for any delay in the filing. Despite that delay, however, we cannot conclude that Irwin's motion is untimely.

We find that Irwin has been reasonably diligent in seeking the removal of MMK from the case. As such, we cannot conclude that he has waived his right to have MMK disqualified. Irwin first raised the issue with MMK shortly after he filed his cross-claim. (Minetz Affidavit, ¶ 5 and Exhibit A). At that time he was advised by Attorney Robert Dargis of MMK that MMK would not defend the cross-claim. (Minetz Affidavit, ¶ 6). Sometime after that, MMK changed its position on the matter and advised him that they would defend the cross-claim. (Minetz Affi-

davit, ¶ 7). MMK was put on notice early in this litigation that Irwin intended to contest its representation of the Axelrod defendants. Therefore, given its substantial contact with Irwin, MMK would have been well advised to early on seek an order regarding its qualification. *See, e.g. Schiessle*, 717 F.2d at 419. We note that Irwin also promptly advised the court as to the conflict.

Moreover, the failure of the Axelrod defendants to answer the cross-claim for over a year, we conclude, contributed significantly to the delay. A movant to disqualify must show that the interests of the opposing counsel's present client are adverse to the movant. *Koch v. Koch Industries*, 798 F.Supp. 1525, 1532 (D.Kan.1992). If the Axelrod defendants admitted the allegations of the cross-claim, there would be no adversity between them and no basis for disqualifying MMK. However, the cross-claim remained unanswered for some time. Under these circumstances, the one-year delay in moving to disqualify MMK was not so substantial that Irwin's motion must be denied.

Yet another factor mitigating against the finding of waiver in this case is the fact that no trial date has been set. Courts have not hesitated to deny a motion to disqualify as untimely when filed only a short time before trial. *See, e.g., Cox v. American Cast Iron Pipe Co.*, 847 F.2d 725, 731 (11th Cir.1988) (motion to disqualify on conflict of interest grounds brought 32 days before trial held waived); *Commonwealth Ins. Co. v. Graphix Hot Line, Inc.*, 808 F.Supp. 1200, 1208–09 (E.D.Pa.1992) (motion filed three weeks before trial untimely); *Trust Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d 85, 87–88 (9th Cir.1983) (motion waived where filed 33 days before trial); *Alexander v. Primerica Holdings, Inc.*, 822 F.Supp. 1099, 1115–17 (D.N.J.1993) (waiver where motion filed 4 months before trial); and *Warpar Mfg. Corp. v. Ashland Oil, Inc.*, 606 F.Supp. 852, 858–59 (N.D.Ohio 1984) (party estopped to move for disqualification six weeks prior to trial); *Cf. Image Technical Services v. Eastman Kodak Co.*, 820 F.Supp. 1212 (N.D.Cal.1993) (no waiver after one year delay). Trial of this matter is not impending, however, thus removing the specter of improper dilatory or

harassing conduct on the part of Irwin. Therefore, we must reject MMK's characterization of Irwin's motion as untimely.

## IX. *CONCLUSION*

For the foregoing reasons stated herein, Irwin's motion to disqualify MMK in the defense of the cross-claim is GRANTED.