**THERMODYNE FOOD SERVICE PRODUCTS, INC., and Aftec, Inc., Plaintiffs,**

v.

**McDONALD'S CORPORATION, et al., Defendants.**

No. 95 C 6747.

United States District Court, N.D. Illinois, Eastern Division.

March 27, 1997.

Craig M. White, Jennifer Kathryn Walter, Andrew Erik Skopp, Wildman, Harrold, Allen & Dixon, Chicago, IL, Gene R. Leeuw, Klineman Rose Wolf and Wallack, Indianapolis, IN, William D. Swift, Swift and Finlayson, Fort Wayne, IN, Charleyne L. Gabriel, John M. Mead, Leeuw, Plopper & Earnest, P.C., Indianapolis, IN, for plaintiffs.

Dan K. Webb, Bruce Roger Braun, Winston & Strawn, Chicago, IL, Jack J. Carriglio, Richard G. Schultz, Carmen David Caruso, Jeffrey Charles Blumenthal, Steven Howard Gistenson, Marla Belson Wilneff, Foran & Schultz, Chicago, IL, Michael L. James, Baker and Daniels, Fort Wayne, IN, for McDonald's Corporation.

David L. Schiavone, Christopher Qualley King, Mary L. Mills, Sonnenschein, Nath & Rosenthal, Chicago, IL, for Specialty Equipment Companies, Inc.

John Lawrence Conlon, Schwartz, Cooper, Greenberg & Krauss, Chicago, IL, Eric S. Rein, Schwartz, Cooper, Greenberger & Krauss, Chicago, IL, for OSI Industries, Inc., Proddel Corporation, Gands Corporation, Beltec International.

Robert Eliot Shapiro, Gayle L. Yeatman, Barack, Ferrazzano, Kirschbaum, Perlman & Nagelberg, Chicago, IL, James R. Higgins, Jr., Middleton & Reutlinger, Louisville, KY, James N. Williams, Middleton and Reutlinger, New Albany, IN, for Liebco, Inc., Benno Liebermann.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

This matter is before the Court on Plaintiffs' motion to disqualify the law firm of Winston & Strawn as counsel for Defendant McDonald's Corporation. For the reasons discussed hereafter, the motion is granted.

## I. BACKGROUND

### A. GDR and Rice v. AFTEC and Tippman

Plaintiff Aftec Inc. ("AFTEC") was incorporated in 1984. In 1986, John Jay Hooker and Vincent Tippman purchased 95% of AF-

TEC's stock. Tippman subsequently purchased Hooker's shares.

GDR Enterprises Inc. ("GDR") is a company run by George D. Rice, a well known consultant in the food service industry. Prior to Tippman's involvement in AFTEC, AFTEC entered into an agreement with GDR to pay GDR a "finder's fee" if it found a buyer for AFTEC. Rice was to be paid a fee of $58,000 and receive a 10% equity interest in AFTEC or its successor.

Following the sale of AFTEC's stock to Hooker and Tippman, Rice never received his finder's fee or his ownership interest in AFTEC. Consequently, Rice and GDR brought a breach of contract action against Tippman and AFTEC ("the GDR case"). Tippman hired the law firm of Winston & Strawn to represent AFTEC and himself in the matter. The GDR case settled during trial.

### B. *AFTEC, et al. v. McDonald's Corporation, et al.*

In the instant case, AFTEC and Thermodyne Food Service Products Inc. ("Thermodyne") bring a trade secret infringement action[1] against McDonald's and other defendants.

Tippman is the majority shareholder of both AFTEC and Thermodyne. The companies focus their resources on the development of food service products and systems. The two companies enjoy somewhat of a symbiotic relationship—Thermodyne is the manufacturing and sales arm and AFTEC is the research and development arm.

Their claim to fame is the development of "Thermodyne technology" for transferring heat to food items. Generally speaking, the Thermodyne technology uses precise computer controls and the interrelationship of numerous component parts to cook and hold food items at lower temperatures through conduction processes, rather than by means of convection heat. The benefit is that the conduction method of cooking and holding food items reduces water loss and the risk of harmful bacteriological development.

AFTEC and Thermodyne allege that McDonald's (and other defendants) acquired knowledge of the Thermodyne technology through improper means in violation of the Illinois Trade Secrets Act, 765 ILCS 1065. The complaint was filed in the summer of 1995. On December 18, 1996, Winston & Strawn—following a ruling on McDonald's summary judgment motion in October of 1996—entered its appearance on McDonald's behalf.

### II. *DISCUSSION*

AFTEC argues that Winston & Strawn cannot defend McDonald's against its claims in the instant matter since Winston & Strawn previously represented AFTEC in a "substantially related" case and likely possesses relevant confidential information from the prior representation. The Court finds that the GDR case and the instant case are "substantially related," thus Winston & Strawn is prohibited from representing McDonald's against AFTEC.

The resolution of the instant dispute is governed by the Rules of Professional Conduct of the United States District Court for the Northern District of Illinois ("Local Rule"). *GTE North, Inc. v. Apache Prod. Co.,* 914 F.Supp. 1575, 1578 (N.D.Ill.1996). The parties agree that Local Rule 1.10(c) governs this matter. Local Rule 1.10(c) provides:

> When a lawyer has terminated an association with a firm, the firm may thereafter represent a person with interests materially adverse to those of a client represented by the formerly associated lawyer if:
>
> (1) the matter is not the same or substantially related to that in which the formerly associated lawyer represented the client; and
>
> (2) no lawyer remaining in the firm has information protected by Rule 1.6 [Confidentiality of Information] and Rule 1.10 [Imputed Disqualification] that is material to the matter.

Thus, for Winston & Strawn to represent McDonald's against AFTEC in this matter, it must satisfy *both* prongs of Local Rule

---

**1.** There are other counts, but the other counts flow from the alleged trade secret infringement.

1.10(c). A failure to satisfy either prong means Winston & Strawn is prohibited from representing McDonald's.

Here, of the numerous attorneys who billed AFTEC and Tippman in the GDR case, only one still remains with the law firm. That attorney billed only one hour during the first week of representation. For the purposes of this opinion, the Court will assume, as McDonald's suggests that the lone remaining attorney did not "represent" AFTEC in the GDR case due to his lack of involvement in the matter. Accordingly, all of the attorneys who "represented" AFTEC in the GDR case are no longer with Winston & Strawn.

Pursuant to the plain-language of Local Rule 1.10(c), Winston & Strawn may represent McDonald's against its former client AFTEC if the GDR case is not "substantially related" to the instant case *and* no lawyers who possess material confidential information remain at Winston & Strawn. Because, as discussed below, the Court finds that the two cases are "substantially related," there is no need to inquire whether any current lawyers in Winston & Strawn actually possess material confidential information.

A "substantial relationship" exists between two cases "if the lawyer could have obtained confidential information in the first representation that would have been relevant in the second." *Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263, 1266 (7th Cir.1983). The "substantial relationship" inquiry is *not* concerned with whether actual confidences were disclosed. *See Westinghouse Elec. Corp. v. Gulf Oil Corp.*, 588 F.2d 221, 224 (7th Cir. 1978). In fact, if the lawyer is a firm rather than an individual practitioner, it is irrelevant whether "different people in the firm handled the two matters and scrupulously avoided discussing them." *Analytica*, 708 F.2d at 1266. Instead the court is to make a "realistic appraisal of the possibility that confidences had been disclosed in the one matter which will be harmful to the client in the other." *Westinghouse*, 588 F.2d at 224.

The "substantial relationship" test essentially has three levels of inquiry: (1) the court must make a factual reconstruction of the scope of the prior legal representation; (2) the court must determine whether it is reasonable to infer that confidential information would have been given; and (3) the court must determine whether the confidential information is relevant to the issues raised in the instant pending litigation. *Westinghouse*, 588 F.2d at 224. Applying the three-part test, the Court finds the GDR case and the instant case are "substantially related."

The prior legal representation in the GDR case concerned Winston & Strawn's defense of AFTEC in what was essentially a breach of contract action. Rice and GDR claimed that as a result of finding a buyer for AFTEC they were entitled to cash and an ownership interest in AFTEC.

There is no dispute that the development of the "Thermodyne technology" was well underway at the time of the GDR case. Because Rice and GDR were allegedly entitled to an ownership interest in AFTEC if they prevailed, one would necessarily have to place a monetary value on such an interest for purposes of calculating their damages— which, of course, is not only necessary for trial, but also, for purposes of negotiating a settlement. Calculating the value of AFTEC would necessarily involve estimating the value of the "Thermodyne technology." And, of course, when valuing the "Thermodyne technology," it is reasonable to infer that a discussion of the sensitive technological aspects underlying the technology occurred.

Finally, knowledge obtained regarding the technological intricacies of the "Thermodyne technology" could be relevant to the issues in the instant litigation which focus primarily on whether McDonald's (and other defendants) misappropriated the technology.

Accordingly, based on a realistic appraisal of the GDR case and the instant litigation, the Court finds that the two cases are "substantially related."

Based on the plain-language of Local Rule 1.10(c), the Court's analysis is over—Winston & Strawn cannot represent McDonald's since it failed to satisfy the first prong. McDonald's does not like that result, however. It claims that even if the cases are "substantially related," Winston & Strawn should not be disqualified if it can show that no lawyers

in the firm possess material confidential information.

McDonald's position is not without merit. In fact, it is entirely consistent with the ABA Model Rules of Professional Conduct ("Model Rule"). Model Rule 1.10(b) states:

> When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer and not currently represented by the firm, unless:
>
> (1) the matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and
>
> (2) any lawyer remaining in the firm has information protected by Rules 1.6 [Confidentiality of Information] and 1.9(c) [Conflict of Interest] that is material to the matter.

Thus, under Model Rule 1.10(b), a firm is *not* prohibited from representing a person with interests materially adverse to those of a client represented by formerly associated lawyers unless the matters are the same or substantially related *and* any remaining lawyers in the firm possess confidential information. Unlike Local Rule 1.10(c), *both* prongs must be met under Model Rule 1.10(b) for the firm to be *disqualified*—a "substantial relationship" alone between the two matters will not do it. Under Local Rule 1.10(c), on the other hand, the firm is *not disqualified* only if it can satisfy *both* prongs—as noted above, a "substantial relationship" alone between the two matters disqualifies the firm.[2]

## III. CONCLUSION

A rule is a rule. Pursuant to the plain-language of Local Rule 1.10(c), if a "substantial relationship" exists between the two matters at issue, the firm is disqualified—the inquiry comes to an end. Because the Court found a "substantial relationship" between the GDR case and the instant matter, according to Local Rule 1.10(c), Winston & Strawn is prohibited from representing McDonald's.[3]

---

2. The Local Rules of Professional Conduct were modeled after the Model Rules of Professional Conduct. But, apparently, the drafters of Local Rule 1.10(c) intended to deviate from the language of Model Rule 1.10(b). Notice, the drafters of Local Rule 1.10(c) neglected to change the last sentence of the "comment" section to reflect the deviation from Model Rule 1.10(b). The last sentence of the "comment" section to Local Rule 1.10(c) is consistent with Model Rule 1.10(b), but conflicts with Local Rule 1.10(c).

3. McDonald's raises a one-paragraph argument that AFTEC's motion for disqualification should be denied as untimely. It is true that such a motion can be waived if untimely. *Healy v. Axelrod Constr. Co. Defined Benefit Pension Plan and Trust*, 155 F.R.D. 615, 622 (N.D.Ill.1994). A timely filing minimizes the detriment to the other party and curbs the use of such a motion as a harassing or delaying tactic. *Id.*

Those concerns, however, are not implicated here. Winston & Strawn was contacted by McDonald's in late November of 1996. Within three weeks and before Winston & Strawn entered its appearance in this matter, AFTEC's counsel notified it that there was a disqualification issue. Thus, McDonald's and Winston & Strawn were well aware from the onset—even before Winston & Strawn entered its appearance—that a disqualification dispute was looming over the horizon. The motion to disqualify was filed in late February of 1996, but the parties informed the Court a couple of weeks earlier that the motion was forthcoming. The Court cannot find that the motion is untimely.