**GEN–COR, LLC, an Indiana Limited Liability Company, and Russell C. Stooks, an individual residing in Arizona, Plaintiffs,**

v.

**BUCKEYE CORRUGATED, INC., an Ohio Corporation, and Roy Allen, an Ohio Resident, in his individual capacity, Defendants.**

No. IP99–1564–C–B/S.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Aug. 31, 2000.

Paul J. Peralta, Baker & Daniels, South Bend, IN, for Plaintiffs.

Jeffrey S. Nickloy, Campbell Kyle & Proffitt, Noblesville, IN, Mark J. Skakun, Buckingham Doolittle & Burroughs, Akron, OH, for Defendants.

### ENTRY DENYING DEFENDANTS' MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL

BARKER, Chief Judge.

Gen–Cor, LLC (Gen–Cor) and Russell C. Stooks sued Buckeye Corrugated, Inc. (Buckeye) and Roy Allen for breach of the Consulting Agreement and Side Letter Agreement formed in conjunction with the sale of Cra–Gen, Inc. (Cra–Gen), the sole owner of Cra–Wal, Inc. (Cra–Wal), from Stooks to Buckeye. Plaintiffs allege that Defendants failed to use reasonable best efforts to maximize profit margins for Cra–Wal; failed to keep accurate and complete books of account and records for the business of Cra–Wal; deliberately understated Cra–Wal's 1998 pretax earning and thereby understated the amount of the Earnout Payments due to Gen–Cor; failed to tender the 1998 Earnout Payment now due and owing; implemented accounting changes and system changes which have resulted in lowering Cra–Wal's reported pretax earning; and denied Gen–Cor, despite its reasonable request, the right to examine the records, financial statements, accountant's work papers, and books of Cra–Gen and Cra–Wal relating to the calculation of pretax earnings and Earnout Payments.

The law firm of Baker & Daniels serves as counsel on behalf of Gen–Cor and Stooks in this matter. Baker & Daniels has also represented Cra–Wal, now a subsidiary of Buckeye, in various matters since at least 1994. On February 23, 2000, Buckeye and Allen filed a Motion to Disqualify Plaintiffs' Counsel ("Defs.' Mot.") accompanied by a Memorandum in Support ("Mem. in Supp. of Defs.' Mot."). On March 8, 2000, Plaintiffs' Response to Defendants' Motion to Disqualify Plaintiffs' Counsel ("Pls.' Resp. in Opp'n.") was filed. Defendants filed a Reply to Plaintiffs' Response to Motion to Disqualify ("Defs.' Reply") on March 24, 2000. By leave of the Court, on April 26, 2000, Plaintiffs filed a Sur–Reply in Opposition to Motion to Disqualify Counsel ("Pls.' Sur–Reply").

For the reasons set forth below, the Court *DENIES* Defendants' Motion to Disqualify Plaintiffs' Counsel.

*Facts*

Some of the facts surrounding this lawsuit are undisputed. On May 27, 1997, Buckeye purchased Cra–Gen, the parent to subsidiary Cra–Wal (a corrugated packaging manufacturer), from Stooks. Mem. in Supp. of Defs.' Mot. at 3; Pls.' Resp. in Opp'n. at 2. During the negotiations for the purchase of Cra–Gen, Buckeye was represented by the law firm of Buckingham, Doolittle & Burroughs, and Baker & Daniels represented Stooks. Mem. in Supp. of Defs.' Mot. at 3; Pls.' Resp. in Opp'n. at 2. In conjunction with the purchase of Cra–Gen, Buckeye and Stooks also executed Consulting and Side Letter Agreements ("the Agreements"). Mem. in Supp. of Defs.' Mot. at 3; Pls' Resp. in Opp'n. at 3–4. These agreements provided that Gen–Cor would provide consulting to Buckeye in exchange for compensation based on the financial performance of Cra–Wal and that Buckeye would operate Cra–Gen and Cra–Wal in the ordinary course of business using its reasonable best efforts to maximize Cra–Wal's profits. Mem. in

Supp. of Defs.' Mot. at 3; Pls.' Resp. in Opp'n. at 3–4. The Agreements also maximized tax advantages. Pls.' Resp. in Opp'n. at 2–4.

Gen–Cor and Stooks allege that Allen and Buckeye breached the Agreements. They also sue under theories of constructive fraud, promissory estoppel, breach of covenant of records access and disclosure, and civil conversion. Plaintiffs claims total at least $1.4 million.

The parties dispute the duration and nature of Baker & Daniels' representation of Cra–Wal. Defendants maintain that Cra–Wal first entered into a lawyer-client relationship with Baker & Daniels in 1992. Affidavit of John DeLoughery ("DeLoughery Aff.") ¶ 2. Plaintiffs state that Baker & Daniels "began to handle a series of discrete legal matters for Cra–Wal" in 1994. Pls.' Resp. in Opp'n. at 2. The Court need not decide exactly when the business relationship between Baker & Daniels and Cra–Wal began. Prior to the sale of Cra–Gen on May 27, 1997, Stooks owned Cra–Wal. No impermissible conflict could have arisen due to Baker & Daniels' representation of Cra–Wal because Buckeye had no interest in Cra–Wal.

The parties disagree on how to characterize the nature of Baker & Daniels' relationship with Cra–Wal. Buckeye and Allen claim that "Baker & Daniels' ongoing representation of Cra–Wal is extensive." Mem. in Supp. of Defs.' Mot. at 11. Plaintiffs counter that "Baker & Daniels' representation of Cra–Wal involves *discrete, minor* labor and employment issues." Pls.' Resp. in Opp'n. at 13 (emphasis added). The billing record of Baker & Daniels for Cra–Wal provides the basic facts on the scope of representation. *See* Exhibit A–1, Pls.' Resp. in Opp'n. Since May of 1997, when Cra–Gen was sold to Buckeye, Baker & Daniels has provided legal services to Cra–Wal on the issues of ERISA, Occupational Health & Safety regulations, collection from a Cra–Wal debtor, Cra–Wal's drug testing policy, executive employee agreements, workplace violence, and an ac-

count payable matter concerning the design of a parking lot disputed to the amount of $22,000. *Id.*; DeLoughery Aff. ¶ 4.

The final important factual element concerns whether Baker & Daniels obtained consent to its dual representation. Peter G. Trybula, a partner at Baker & Daniels, engaged in a telephone conversation with Robert W. Malone, a lawyer for the firm of Buckingham, Doolittle, & Burroughs and a director of Buckeye, on September 8, 1999. Affidavit of Robert W. Malone ("Malone Aff.") ¶¶ 1–2; Affidavit of Peter G. Trybula ("Trybula Aff.") ¶¶ 1, 11–12. During the conversation, Trybula stated that Baker & Daniels represented CraWal in certain matters and that Baker & Daniels was working on behalf of Gen–Cor and Stooks in a dispute with Buckeye concerning payments under the Agreements. Malone Aff. ¶¶ 2–3; Trybula Aff. ¶ 12. Malone did not object to the representation at that time and stated that he would consult with Buckeye regarding the issue. *Id.*

### Applicable Law

This case is before the Court under its diversity jurisdiction, 28 U.S.C. § 1332(a). As a diversity case, there is some question as to the law governing the issue of attorney disqualification. *See* 19 Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 4511 n. 105 (2d ed.1996) ("the following list of legal issues ... reflect[s] the wide range of contexts not involving the application of a specific Federal Rule of Civil Procedure in which questions regarding the application of state or federal law have arisen in the federal courts: ... the ethical standards governing the conduct and misconduct of attorneys"). Pursuant to Local Rule 83.5(f), the conduct of attorneys practicing in this Court is governed by the Rules of Professional Conduct, as adopted by the Indiana Supreme Court. For the specific question of disqualification, "federal common law independently supplies standards." *Brennan v. Sun Healthcare*

*Group, Inc.,* 1998 WL 1567451, at *2 (S.D.Ind. Jan.29, 1998) (citing *LaSalle National Bank v. County of Lake,* 703 F.2d 252, 255 (7th Cir.1983) and *Analytica, Inc. v. NPD Research, Inc.,* 708 F.2d 1263, 1266–67 (7th Cir.1983)). Fortunately, for the sake of simplicity, neither party has suggested a divergence between the relevant Rules of Professional Conduct and the disqualification standards set forth by the Seventh Circuit and the Supreme Court. Rule of Professional Conduct 1.7 sheds the most light on the facts here, and decisions of the federal courts fill in gaps not covered by Indiana sources.

### Analysis

With regard to the rule governing conflicts of interest between current clients,[1] Indiana adopted Model Rule of Professional Conduct 1.7 of the American Bar Association. Indiana Rule of Professional Conduct 1.7 provides:

Conflict of interest: General rule.

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

  (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

  (2) each client consents after consultation

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

  (1) the lawyer reasonably believes the representation will not be adversely affected; and

  (2) the client consents after consultation.

This Rule protects the client's expectation of loyalty from counsel. *See* Comment to Rule 1.7 Indiana Rules of Professional Conduct ("Loyalty is an essential element in the lawyer's relationship to a client.").

### No Violation of Rule 1.7(b)

■ Rule 1.7(b) will be discussed first. This section prohibits Baker & Daniels from representing Gen–Cor and Stooks in this action if its representation of the Plaintiffs would "materially limit" its representation of Cra–Wal, unless the firm "reasonably believes the representation will not be affected" and Cra–Wal consents. Rule 1.7(b). Defendants have failed to establish that Baker & Daniels' representation of either client will be "ma-

---

1. In the Mem. in Supp. of Defs.' Mot. at 9–16, Defendants argue that Baker & Daniels' representation of Gen–Cor and Stooks violates Rule of Professional Conduct 1.9, prohibiting a lawyer from "represent[ing] another person in the same or substantially related matter in which the person's interests are materially adverse to the interests of the *former* client." Rule 1.9 (emphasis added). Generally, "a client is a current client if the representation existed at the time the complaint was filed." *H.G. Gallimore, Inc. v. Abdula,* 1987 WL 5940, at *3 (N.D.Ill. Jan.29, 1987) (citing *Unified Sewerage Agency of Washington County v. Jelco, Inc.,* 646 F.2d 1339, 1345 n. 4 (9th Cir.1981); *Fund of Funds, Ltd. v. Arthur Andersen & Co.,* 435 F.Supp. 84, 95–96 (S.D.N.Y. 1977), *aff'd in part, rev'd in part on other grounds,* 567 F.2d 225, 233 (2d Cir.1977)). Neither Defendants, Mem. in Supp. of Defs.' Mot. at 3–4, nor Plaintiffs, Pls.' Resp. in Opp'n. at 5–6, denies that Cra–Wal was a client of Baker & Daniels on October 5, 1999 when the Complaint was filed. Plaintiffs have noted that Rule 1.9 covers conflicts with *former* clients, rather than current clients. Pls.' Resp. in Opp'n. at 14. Defendants did not address Rule 1.9 in Defendants' Reply, and case law shows that Rule 1.7 governs conflicts with current clients. *See In re Robak,* 654 N.E.2d 731, 734–35 (Ind.1995) (applying Rule 1.9 to conflict with former client); *SWS Financial Fund A v. Salomon Bros. Inc.,* 790 F.Supp. 1392, 1397–98 (N.D.Ill.1992) (rejecting application of Illinois equivalent of Rule 1.9 in favor of Illinois equivalent of Rule 1.7 after finding that Salomon Brothers was client of firm at time firm undertook adverse representation). While the Indiana State Bar Association Legal Ethics Committee determined that the situation at issue here violated Rule 1.9, the Court believes that analysis under Rule 1.7 is proper for the reasons given above.

terially limited" by Gen–Cor and Stooks suit against Allen and Buckeye.

Since October of 1999, Baker & Daniels' representation of Cra–Wal has been limited to labor and employment issues and an account payable matter arising out of a dispute over the paving of a parking lot. *See* Neighbours Aff. ¶ 3; Exhibit A–1, Pls' Resp. in Opp'n. These are narrow issues, and there is no reason to believe that Baker & Daniels' representation of Gen–Cor and Stooks would prevent the firm from pursuing these matters to the fullest. In fact, the key element of the Plaintiffs' claims in this case is that they are owed more money than they received, based on the profits of Cra–Wal. Even if Baker & Daniels' interest in representing Gen–Cor and Stooks were to affect its representation of Cra–Wal, the goal in the Cra–Wal matters would remain the same-to minimize costs to CraWal. Furthermore, almost all of the cases in which Indiana courts have found a violation of Rule 1.7(b) can be distinguished on the basis that the objecting client's interest clearly conflicted with the attorney's own interests, rather than with the interests of another client of the attorney. *See e.g., In re Hoffman,* 700 N.E.2d 1138, 1139 (Ind.1998) (attorney's continued representation of client materially limited by attorney's own interest in avoiding malpractice action for filing client's claim in wrong state); *In re Hawkins,* 695 N.E.2d 109 (Ind.1998) (attorney's sexual relations with client materially limited his representation of her); *In re Strutz,* 652 N.E.2d 41, 51 (Ind.1995) (client's interests materially limited when attorney filed claim on client's behalf against companies to which he was general counsel in order to advance his own interests).

The situation here is also distinguishable from *In re Anonymous,* 655 N.E.2d 67, 71 (Ind.1995), a case in which the Supreme Court of Indiana found a violation of Rule 1.7(b) when an attorney represented a company in a fraud action against a trustee and the attorney had also represented the trustee against the union in a wrongful discharge action based on some of the same facts as the union's fraud claim. Both actions had arisen out of the trustee's alleged representations and behavior in an earlier lawsuit in which the union had been the defendant. *Id.* at 69 The trustee's and union's claims against each other appear to have been attempts to assign blame to one or the other for the actions giving rise to the first lawsuit. Here, the Plaintiffs criticize Buckeye, not Cra–Wal, for whatever misdeeds concerning Cra–Wal's profitability may have occurred and would result in additional payments to Gen–Cor and Stooks under the Agreements. Also, Baker & Daniels is not suing and has not sued Gen–Cor or Stooks on behalf of Cra–Wal, which would be the situation analogous to the additional layer of conflict in *In re Anonymous.*

*Violation of Rule 1.7(a)*

██ Because of the parent-subsidiary relationship between Defendant Buckeye and Baker & Daniels' client, Cra–Wal, Baker & Daniels is in violation of Rule 1.7(a). However, a finding of conflict is not automatically grounds for disqualification of counsel. *SWS Financial Fund A v. Salomon Bros. Inc.,* 790 F.Supp. 1392, 1400 (N.D.Ill.1992) (quoting *United States v. Miller,* 624 F.2d 1198, 1201 (3d Cir. 1980)). For the reasons explained below, the Court finds that disqualification is not an appropriate remedy for the violation of Rule 1.7(a) by Baker & Daniels in this case.

The conflict of interest in violation of Rule 1.7(a) arises because Baker & Daniels represents Plaintiffs in an action against Buckeye, the parent company, of one of the firm's other clients, Cra–Wal. A number of courts have found a violation of professional ethics when a firm takes a position hostile to a corporate relation of one of its clients. In *Image Technical Services, Inc. v. Eastman Kodak Co.,* 820 F.Supp. 1212 (N.D.Cal.1993), the court found that Coudert Brothers violated a California rule similar to Rule 1.7(a) by

representing plaintiffs in an antitrust action against Eastman Kodak when Eastman Chemicals, a major operating division of Kodak, was already a client. Even though it was "undisputed that the work performed by Coudert for Eastman Chemicals did not involve issues directly relevant" to the antitrust litigation, the relationship between the defendant and Coudert's client was sufficient for the court to find a violation. *Id.* at 1214. *See also Stratagem Development Corp. v. Heron International N.V.,* 756 F.Supp. 789 (S.D.N.Y.1991) (firm's failure to end representation of defendant's subsidiary in unrelated labor dispute grounds for disqualifying firm from representing plaintiff in breach of contract action against defendant parent corporation); *Gould, Inc. v. Mitsui Mining & Smelting Co.,* 738 F.Supp. 1121, 1126 (N.D.Ohio 1990) (finding violation of Canon 5 of the Model Code of Professional Responsibility, predecessor of Rule 1.7, when firm represented plaintiff in suit against parent corporation of one of firm's other clients).

Baker & Daniels attempts to excuse its representation of two opposing parties by arguing that the firm obtained consent to represent Stooks and Gen–Cor in this matter. The attempt fails. Baker & Daniels maintains that in order to find a conflict of interest under Rule 1.7(a), the Court must find that Buckeye and Cra–Wal are the same entity. The firm further argues that if Buckeye and Cra–Wal are the same entity, Buckeye has consented to Baker & Daniels' representation of Plaintiffs in this case. To support this contention, Baker & Daniels states that Trybula, one of its partners, contacted Malone of Buckingham, Doolittle & Burroughs and a director of Buckeye, to seek consent to any poten-

tial conflict. Pls.' Resp. in Opp'n. at 17. During the telephone conversation of September 8, 1999, Trybula states that he "explained Baker & Daniels [sic] continued representation of Mr. Stooks and asked Malone if Buckeye would have any concerns with Baker & Daniels' [sic] continuing to represent Gen–Cor and Russell Stooks in resolving the dispute." Trybula Aff., ¶ 12. Trybula's disclosure was inadequate to meet the requirements of consent set forth in Rule 1.7(a).

■ The rule excuses a conflict if "each client consents *after consultation.*" Rule 1.7(a)(2). The "Definitions" section of the Rules of Professional Conduct defines "consult" or "consultation" as "communication of information reasonably sufficient to permit the client to appreciate the significance of the matter in question." The District Court for the Northern District of Illinois provides guidance on determining whether consultation is sufficient in a case concerning a potential conflict.[2] *Healy v. Axelrod Const. Co. and Defined Ben. Pension Plan and Trust,* 155 F.R.D. 615, 620 (N.D.Ill.1994). Examining Rule 1.2(c), which permits an attorney to limit the objectives of representation of a client, the District Court for the Northern District of Illinois found disclosure insufficient because the attorney failed to advise the client of the nature of the conflict or to call the client's attention to his other options. *Id.* Neither Trybula nor any other person involved in the dispute on behalf of Stooks or Gen–Cor explained to Buckeye or Cra–Wal the nature of the conflict between Cra–Wal's interests and those of Stooks and Gen–Cor or the other avenues open to Cra–Wal. Without adequate disclosure, a

---

**2.** The Rules of Professional Conduct for the Northern District of Illinois substitute the word "disclosure" where the Indiana Rules of Professional Conduct use the word "consultation." *Compare* Local Rule 83.51.7(a) of the Rules of the United States District Court for the Northern District of Illinois ("A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless … each client consents after *disclosure*") *with* Rule 1.7(a) of the Indiana Rules of Professional Conduct ("a lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless … each client consents after *consultation*") (emphasis added).

client cannot consent to adverse representation.

*Disqualification Not an Appropriate Remedy*

■ While courts are likely to find a violation of Rule 1.7 and like provisions when a firm represents a party opposing a corporate relation of one of its current clients without consent, such a finding need not result in disqualification, a measure often disfavored by courts. *Schiessle v. Stephens*, 717 F.2d 417, 420 (7th Cir. 1983) ("disqualification is a drastic measure which courts should hesitate to impose except when absolutely necessary") (citations omitted).

The key factor weighing against disqualification of Baker & Daniels is that the firm's representation of Gen–Cor and Stooks in this action does not prejudice Buckeye and Allen, despite Baker & Daniels' simultaneous representation of Cra–Wal. In both *SWS Financial Fund*, 790 F.Supp. at 1401–02, and *Gould*, 738 F.Supp. at 1126, the courts focused on whether confidential information had passed to the firms through the allegedly conflicting representations. Noting that one of the purposes behind Rule 1.7 is to "serve[ ] as a prophylactic to protect confidences that a client may have shared with his or her attorney," the District Court for the Northern District of Illinois borrowed the "substantially related" analysis from Rule 1.9. *SWS Financial Fund*, 790 F.Supp. at 1401. Rule 1.9 is normally used to judge potential conflicts between a current client and a former client. The District Court for the Northern District of Illinois used it as a standard for measuring a possible conflict between two current clients. *Id.* The substantial relationship analysis has three parts:

First, the trial judge must make a factual reconstruction of the prior legal representation. Second, it must be determined whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters. Third, it must be determined whether that information is relevant to the issues raised in the litigation pending against a former client.

*LaSalle National Bank*, 703 F.2d at 255–56 (citations omitted).

Over the years, Baker & Daniels has represented Cra–Wal in a number of matters, including:

A. Advice and current representation concerning an ongoing dispute involving an account payable matter with Dorsey paving [sic];

B. Advice regarding Cra–Wal's rights in respect to an account receivable due from a customer in bankruptcy;

C. Supervisory Training sessions on the subject of sexual harassment;

D. Advice concerning a union organizing campaign at Cra–Wal;

E. Advice concerning various employment law issue [sic] encountered in day-to-day operations;

F. Advice regarding Cra–Wal's dealings with the Indian [sic] Occupational Health and Safety Administration;

G. Advice regarding Cra–Wal's 401K plan and Cra–Wal's health insurance plan;

H. Advice in 1994 regarding Cra–Wal's reply to a proposed fine imposed by the federal Department of Transportation.

Defs.' Mot. at 12, quoting DeLoughery Aff. ¶ 2.

Defendant claims that Baker & Daniels, through its representation of Cra–Wal, received confidential information concerning Cra–Wal's:

(1) corporate relationship with Cra–Gen and Gen–Cor;

(2) accounting matters, including accounts payable and accounts receivable;

1056

(3) policies and records respecting employment and labor issues;

(4) dealings with employment and labor agencies and regulating authorities; and

(5) financial posture, budget limitations, and tax information.

Defs.' Mot. at 13–14.

If the Court determines either that it is not reasonable to infer that the information listed above was given to Baker & Daniels during its representation of Cra–Wal or that this information was given to Baker & Daniels, but is not substantially relevant to the issues in the litigation against Buckeye, then the Court must conclude that Baker & Daniels' representation of Cra–Wal is not substantially related to this lawsuit. *LaSalle National Bank,* 703 F.2d at 255–56.

Without a doubt, Baker & Daniels' representation of Cra–Wal has made it privy to "information concerning [Cra–Wal's] corporate relationship with Cra–Gen and Gen–Cor." In 1997, Baker & Daniels negotiated the sale of Cra–Gen, the sole owner of Cra–Wal, to Buckeye. However, up until the sale, Cra–Gen and Cra–Wal were owned entirely by Stooks, so Stooks would have had access to (and control over) Cra–Wal's corporate relationship with the other entities. Baker & Daniels could not have learned anything through its representation of Cra–Wal not already known to Stooks. For the period after the sale of Cra–Wal to Buckeye, Defendants' allegation that Baker & Daniels received information about Cra–Wal's "corporate relationship with Cra–Gen and Gen–Cor" is not sufficiently specific for the Court to find that relevant confidential information would have been passed to Baker & Daniels in the course of its post–1997 representation of Cra–Wal.

Through its representation of Cra–Wal in the paving matter and in Cra–Wal's attempt to collect an account receivable due from a customer in bankruptcy, it is reasonable to infer that Baker & Daniels received confidential information related to Cra–Wal's "accounting matters, including accounts payable and accounts receivable." However, it is not reasonable to assume that Baker & Daniels' representation of Cra–Wal in these limited matters would have gained the firm access to Cra–Wal's general financial records. In addition, while the limited accounting information available to Baker & Daniels through its representation of Cra–Wal in these matters is relevant to the issues in this case–that Plaintiffs have not received the full amount of Earnout Payments they are owed due to Defendants' failure to maximize Cra–Wal's profit and to report earnings, the amounts at issue are not such a sizeable portion of the losses claimed as to be "substantially related" to the case against Buckeye.

Baker & Daniels has represented Cra–Wal in a number of employment and labor issues, including reviewing a proposed drug policy and answering questions regarding an employee threatened by a former domestic partner. Neighbours Aff. ¶ 3. It also has advised Cra–Wal concerning union organizing and the Indiana Occupational Health and Safety Administration. Through these matters, Baker & Daniels presumably gained access to "policies and records respecting employment and labor issues" and to information about Cra–Wal's "dealings with employment and labor agencies and regulating authorities." However, Buckeye's assertions that Baker & Daniels received this information "is stated at too great a level of abstraction for this court to find that [Baker & Daniels'] work is substantially related to the present litigation." *SWS Financial Fund,* 790 F.Supp. at 1401–02 (finding that defendant's assertions that firm acquired knowledge about defendant's "policy on compliance" too abstract for court to find that firm's work on behalf of defendant substantially related to present fraud action in connection with treasury securities).

Finally, Defendants contend that Baker & Daniels received confidential informa-

tion concerning Cra–Wal's "financial posture, budget limitations, and tax information." Defendants fail to specify which matters would reasonably result in the firm's receipt of this potentially broad-ranging information. A search of the record has turned up nothing after May of 1997, before which Stooks had access to all information concerning Cra–Wal through his ownership of Cra–Gen, which supplies the link between the matters for which Baker & Daniels provided legal services to Cra–Wal and the information allegedly given to Baker & Daniels. If Baker & Daniels received detailed information about Cra–Wal's "financial posture, budget limitations, and tax information," this information would be "substantially related" to the issue of the case. However, the record does not support this conclusion.

In combination with the important determination that Buckeye and Allen are not prejudiced by the confidential information that can be reasonably inferred to have passed to Baker & Daniels through its representation of Cra–Wal, two other factors are important in the Court's decision to deny the motion to disqualify counsel. First, there is a concern that disqualification motions have "the usual effect of diverting the litigation from attention to its merits." *Bobbitt v. Victorian House, Inc.*, 545 F.Supp. 1124, 1128 (N.D.Ill.1982). Where, as here, one of Plaintiffs' allegations is that Defendants have denied and delayed providing Plaintiffs access to financial records to which Plaintiffs claim a right, it seems especially likely that the disqualification motion is just another way to delay access to the records until a later day. Should the disqualification motion succeed, delay in getting to the merits lengthens and the problems resulting from delay become greater. Baker & Daniels has been working on this case on behalf of Gen–Cor and Stooks since July of 1999, when Stooks asked the firm to contact Buckeye in an effort to resolve the dispute. Pls' Resp. in Opp'n. at 4. Disqualifying Baker & Daniels at this point in the litigation would be costly to Gen–Cor and

Stooks. *Gould,* 738 F.Supp. at 1126–27 ("disqualifying [counsel] from representing [plaintiff] would ... cost [plaintiff] a great deal of time and money"). The Court also loses the time and labor it expended in familiarizing itself with the case prior to the disqualification. *SWS Financial Fund,* 790 F.Supp. at 1400–01. Second, the Court recognizes "the prerogative of a party to proceed with counsel of its choice." *Schiessle,* 717 F.2d at 420. While disqualifying Baker & Daniels may add some small benefit to the attorney-client relationship between Baker & Daniels and Cra–Wal, it would destroy another attorney-client relationship, that of Baker & Daniels and Stooks and Gen–Cor.

*Conclusion*

For the foregoing reasons, the Court *DENIES* Buckeye and Allen's Motion to Disqualify Plaintiffs' Counsel.