Joseph ETTINGER, Joseph Saladino and Vinnie Saladino and Brian Halloran and Kathleen Halloran, Individually and on behalf of all others similarly situated, Plaintiffs,

v.

CRANBERRY HILL CORPORATION; Charles A. Poalillo; Penn Hills Lodge, et al., Defendants.

No. Civ. 85–0859.

United States District Court, M.D. Pennsylvania.

May 20, 1986.

Joseph Ettinger, New York City, pro se.

Samuel W. Newman, Mark S. Love, Mervine, Brown, Newman, Williams & Mishkin, P.C., Stroudsburg, Pa., William H. Robinson, Jr., Stroudsburg, Pa., for Cranberry Hill Corp., Charles A. Poalillo, Penn Hills Lodge, Inc., Penn Hills Enterprises.

John P. Lawler, Stroudsburg, Pa., for Marotta, Manta, Jenkins, Lacktis, Smith.

Marshall E. Anders, Stroudsburg, Pa., for Cost Control Marketing & Management, Inc.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

Plaintiffs brought this action pursuant to 28 U.S.C. § 1331 against defendants alleging that violations of the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701, federal securities laws, 15 U.S.C. §§ 77b(1), § 3(a)(10), 77c(a)(10), § 77q and state law. Presently before the court is defendants' Motion to Disqualify plaintiffs' counsel, the law firm of O'Malley, Harris & Schneider, filed October 30, 1985. A brief in support of defendants' motion was filed November 19, 1985. Plaintiffs opposed the motion by brief dated December 2, 1985. Oral argument was heard January 29, 1986 after which the parties were given the opportunity to file supplemental briefs. All briefs having been filed, the motion is now ripe for disposition. For the reasons set forth below, defendants' Motion to Disqualify will be granted.

### I. Facts

Plaintiffs in this action are the owners of building lots in the Penn Estates, a development in Monroe County, Pennsylvania. Named as defendants are: Cranberry Hill Corporation [Cranberry Hill]; Charles Poalillo [Poalillo], sole owner of Cranberry Hill and principal shareholder of Penn Hills Lodge, Inc.; Penn Hills Enterprises, also controlled by Poalillo; Penn Hills Lodge, Inc., a corporation which is the sole shareholder of Cranberry Hill Corporation; five sales agents of Cranberry Hill; and Cost Control Market and Managment, a marketing company alleged to be involved in the sale of lots at Penn Estates.

Plaintiffs are represented by the law firm of O'Malley, Harris & Schneider. Defendants Cranberry Hill, Poalillo, Penn Hills Lodge and Penn Hills Enterprises move to disqualify the O'Malley, Harris & Schneider firm because an attorney in the firm currently represents them in a state court action.

Specifically, the facts unfold as follows: In June, 1983, an employee of Penn Hills Lodge embezzled monies from the corporation. After a plea of guilty and sentence of imprisonment of the employee, Penn Hills Lodge filed a theft loss with its insurance carrier, United States Fidelity & Guaranty Company [USF & G]. USF & G paid the loss and selected the O'Malley, Harris & Schneider firm to institute an action against the employee for recovery of the embezzled funds.

Russell O'Malley, Jr., an O'Malley, Harris & Schneider attorney, informed Penn Hills Lodge of O'Malley's representation of USF & G by contacting in-house counsel, William H. Robinson, Jr. O'Malley and Robinson met in early 1984 at which time they discussed the embezzlement scheme. At this time, Robinson provided O'Malley with photocopies of documents, including statements of employees, copies of checks and daily cash sheets and bank deposit slips. O'Malley then met with the current Penn Hills Lodge's bookkeeper to discuss bookkeeping procedures, and, according to defendants, "confidential records and accounts" were disclosed.

O'Malley then filed an action in state court entitled "Penn Hills Lodge, Inc. and Penn Hills Enterprises, Inc. v. Phillip Scaggs," Civil No. 85–392, filed in Monroe County Court of Common Pleas on February 13, 1985. The O'Malley, Harris &

Schneider firm filed the instant action against defendants on June 25, 1985. By letter dated March 12, 1986, after oral argument and briefing, O'Malley informed the court that he had withdrawn his appearance in the state action against Scaggs.

## II. Discussion

■ Two standards of review are utilized to determine whether a Motion to Disqualify is meritorious. If the representation is against an existing client, a prima facie standard is appropriate; if the representation is against a former client, then the "substantial relationship" test is employed. *See Kaminski Brothers, Inc. v. Detroit Diesel Allison*, 638 F.Supp. 414 (M.D.Pa., 1985) (Conaboy, J.)[1] (citing *In Re Corn Derivatives Antitrust Litigation*, 748 F.2d 157 (3d Cir.1984) *cert. denied sub. nom. Cochrane & Bresnahan v. Plaintiff Class Representatives*, 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985)). Under the prima facie standard, the propriety of the conduct is "measured not so much against the similarities in litigation, as against the duty of undivided loyalty which an attorney owes to each of his clients." *Kaminski Brothers, supra* at 415 quoting *Cinema 5 Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1386 (2d Cir.1976). Under the substantial relationship test, an examination is required of the similarities in the subject matter of each representation. *Id.* As a preliminary matter, however, the court must determine whether O'Malley, Harris & Schneider's withdrawal of its appearance for Penn Hills in Monroe County, while this motion was under the court's advisement,

has any effect on the standard to be employed.

■ Because the action in state court involving the Penn Hills entities was existing when the present federal action was initiated, the court finds that the prima facie standard should still be applied. *See Unified Sewerage Agency of Washington County, Oregon v. Jelco, Inc.*, 646 F.2d 1339, 1345 n. 4 (9th Cir.1981) (prima facie standard continues even if the representation ceases prior to filing of the motion to disqualify) (citation omitted); *See also Equal Employment Opportunity Commission v. Orson H. Gygi Co., Inc.*, 749 F.2d 620, 621 (10th Cir.1984).

In analyzing a disqualification issue, our Court of Appeals has stated appropriate guidance may be found in the American Bar Association Model Code of Professional Responsibility. *In Re Corn Derivatives Antitrust Litigation*, 748 F.2d 157, 160 (3d Cir.1984). In the case *sub judice*, one involving concurrent representation of adverse interests, the ethical principles of Canon 5 and Disciplinary Rule 5–105 are implicated.[2] *International Business Machines Corp. v. Levin*, 579 F.2d 271, 279 (3d Cir.1978). Canon 5 states: "A lawyer should exercise independent professional judgment on behalf of a client." Disciplinary Rule 5–105[3] provides as follows:

> DR 5–105 Refusing to Accept or Continue Employment if the Interests of Another Client May Impair the Independent Professional Judgment of the Lawyer.

Code of Professional Responsibility. *See In Re Estate of Pedrick*, 482 A.2d 215, 505 Pa. 530, 542 (1984). Local Rule 304.2 states that the Code of Professional Responsibility adopted by this court is that adopted by the highest court of the state in which this court sits.

---

**1.** In *Kaminski,* the Motion to Disqualify counsel, the Nogi, O'Malley, Harris & Schneider firm, was denied. That case, however, is factually distinguishable from the one presented here. First, the issue presented was one involving a *former* client *and* the firm offered to withdraw as local counsel before the filing of the *Kaminski* action. As a result, Judge Conaboy noted that they should not be held to the "tremendous burden mandated by the application of the prima facie standard." In the case *sub judice,* the issue presented is one involving an *existing* client precluding avoidance of the prima facie standard.

**2.** The Supreme Court of Pennsylvania has adopted the American Bar Association Model

**3.** This is not to imply that Nogi, O'Malley & Schneider's independent judgment actually has been impaired. Leading case law and especially our Court of Appeals begins the conflict of interest analysis with Canon 5 and Disciplinary Rule 5–105. *See In Re Corn Derivatives Antitrust Litigation,* 748 F.2d 157 (3d Cir.1984); *International Business Machines Corp. v. Levin,* 579 F.2d 271 (3d Cir.1978).

(A) A lawyer shall decline proferred employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proferred employment, except to the extent permitted under DR 5–105(C).

(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5–105(C).

(C) In the situations covered by DR 5–105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

(D) If a lawyer is required to decline employment or to withdraw from employment under DR 5–105, no partner or associate of his or his firm may accept or continue such employment.

As noted in *Levin*, "adverse effect" is not defined. "We think, however, that it is likely that some 'adverse effect' on an attorney's exercise of his independent judgment on behalf of a client may result from the attorney's adversary posture toward that client in another matter." *Id.* at 280. Our Court of Appeals continued, *citing Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1386 (2d Cir.1976) with approval: "Putting it as mildly as we can, we think it would be questionable conduct for an attorney to participate in any lawsuit against his own client without the knowledge and consent of all concerned."

Under the Code [of Professional Responsibility], the lawyer who would sue his own client, *asserting in justification that lack of "substantial relationship" between the litigation and the work he has undertaken to perform for that client, is leaning on a slender reed indeed.*

*Cinema 5, supra* at 1386. (emphasis supplied)

[T]he "substantial relationship" test does not set a sufficiently high standard by which the necessity for disqualification should be determined. That test may be properly applied only where the representation of a former client has been terminated and the parameters of such relationship have been fixed. Where the relationship is a continuing one, adverse representation is prima facie improper ... and the attorney must be prepared to show, at the very least, that there will be no actual or *apparent* conflict in loyalties or diminution in the vigor of his representation.

*Id.* at 1387 (emphasis in original). *See also Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263, 1266 (7th Cir.1983) (irrelevant whether attorney actually obtained information and used it against client, or whether, if a law firm is involved instead of a solo practitioner, different people in firm handled the two matters and scrupulously avoided discussing them); *Realco Service, Inc. v. Holt*, 479 F.Supp. 867, 871 (E.D.Pa. 1979) (when attorney prohibited by Code from representing a particular client in a particular action, all members of that firm are similarly disqualified); *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 435 F.Supp. 84, 96 (S.D.N.Y.1977) *modified on other grounds*, 567 F.2d 225 (2d Cir. 1977) (irrelevant that law firm was large and two different and separate groups of attorneys were representing adverse interests).

■ O'Malley, Harris & Schneider contends, however, that it did not represent the Penn Hill entities but rather, represented only USF & G's interests. It is argued that "the mere appearance for the named plaintiff in the Monroe County suit does not necessarily constitute, in the context of subject issues, a 'representation of an interest.'" Supplemental Brief Contra Motion to Dismiss, Document 51 of the Record at 2. The court does not agree. While it may be true that USF & G, holding a subrogated claim, is a party in interest, it cannot be held that the named plaintiffs in a suit

**372**

have no interest in the action nor can it be held that the attorney entering an appearance for a named plaintiff is not actually representing that party. Any other holding would render meaningless rules requiring entry of appearances of attorneys and ethical rules regarding dual or adverse representation of former and existing clients.

 Additionally, an attorney owes a fiduciary duty to the insured even when the attorney originally represents the insurer. *State Farm Mutual Automobile Insurance Company v. Walker,* 382 F.2d 548, 552 (7th Cir.1967) *cert. denied,* 389 U.S. 1045, 88 S.Ct. 789, 19 L.Ed.2d 837 (1968); *Westinghouse Electric Corp. v. Kerr-McGee Corp.,* 580 F.2d 1311, 1319 (7th Cir.) *cert. denied,* 439 U.S. 955, 99 S.Ct. 353, 58 L.Ed.2d 346 (1978) ("When an insurer retains an attorney to investigate the circumstances of a claim and the insured, pursuant to a cooperation clause in the policy, cooperates with the attorney, *the attorney may not thereafter represent a third party suing the insured* nor indeed continue to represent the insurer once a conflict of interest surfaces.") (emphasis added) (footnote omitted). *See also Moritz v. Medical Protective Company of Fort Wayne, Indiana,* 428 F.Supp. 865, 873 n. 8 (W.D. Wis.1977) (citation omitted); Developments in the Law—Conflict of Interest in the Legal Profession, 94 Harv.L.Rev. 1244, 1322 & n. 195 (1981).

In the case *sub judice,* O'Malley, Harris & Schneider owed an individual duty of loyalty to the Penn Hills entities. Clearly, there is, at a minimum, the appearance of impropriety when O'Malley, Harris & Schneider then sues the same entities. Such a dual representation is prima facie improper. *Cinema 5, supra; Accord Kaminski Brothers, Inc. v. Detroit Diesel Allison,* 638 F.Supp. 414 (M.D.Pa., 1985) (Conaboy, J.). The reality of this factual situation is that O'Malley, Harris & Schneider was suing and representing the same entities at the same time. The court rejects the argument that Penn Hills' interests were never implicated or represented.

As a result, the Motion to Disqualify will be granted.

An appropriate Order will enter.