COMMERCIAL UNION INSURANCE COMPANY, Plaintiff,

v.

MARCO INTERNATIONAL CORP., Defendant.

No. 98 CIV. 6424(LAK).

United States District Court, S.D. New York.

March 31, 1999.

Julia M. Moore, Nicoletti Hornig & Sweeney, for Plaintiff.

William D. Fireman, Weitz & Luxenberg, P.C., for Defendant.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Plaintiff Commercial Union Insurance Co. ("Commercial") brings this action for a declaratory judgment with respect to the scope of an ocean cargo policy underwritten on behalf of defendant Marco Interna-tional Corp. ("Marco"). Marco moves to disqualify Commercial's counsel in light of her firm's nominal representation of Marco in an unrelated subrogation suit arising out of Commercial's payment to Marco on the same policy with respect to another claimed loss. The issue whether an insurance carrier's counsel is disqualified from representing the carrier in coverage litigation with an insured by its nominal representation of the insured as subrogor appears to be one of first impression in this circuit.

### Facts

Commercial is an insurance carrier issuing, *inter alia,* ocean cargo policies.[1] Marco deals in aluminum ingots and scrap aluminum.[2]

Commercial issued an ocean cargo insurance policy to Marco effective February 1, 1996.[3] The policy contains standard clauses providing that Commercial is subrogated to Marco upon payment of any loss, permitting Commercial to sue in Marco's name to recover paid losses as subrogee, and requiring Marco to assist in the prosecution of any such suit.[4]

Some time in or about March 1998, Marco sustained a loss unrelated to that at issue here and made claim against Commercial.[5] Commercial duly paid the loss and in June 1998, as subrogee, brought suit in Marco's name to recover from a third party.[6] The firm Nicoletti, Hornig, & Sweeney ("NH & S") represents Commercial,[7] with which it has a long relationship, and therefore Marco, in that suit, which remains pending.[8] Although representing Marco in name, NH & S reports to Commercial. Marco pays none of NH & S's fees and has no role in directing or controlling the litigation.[9]

---

1. Cpt. ¶ 7; Ans. ¶ 18.

2. Cpt. ¶ 9.

3. Ans. ¶ 18.

4. Fireman Aff. Ex. A, Ex. 1 ¶ 38.

5. Cpt. Schedule A, *Marco Int'l Corp. v. M.V. Jutha Suphannika,* No. 98 Civ. 4479(SHS).

6. *See id.* at 4. This matter was filed initially in the Southern District of Georgia. It was transferred to the Southern District of New York on June 24, 1998.

7. Moore Aff. ¶ 2.

8. *Id.* ¶¶ 1–2.

9. *Id.* ¶ 3.

Marco sustained the loss that is the subject of this case in or about March 1997.[10] In September 1998, Commercial brought this action, in which it is represented here by NH & S,[11] for a declaration that the loss is not covered by the policy.[12] Marco counterclaimed, requesting a declaration to the opposite effect.[13]

Marco objects to NH & S's representation of Commercial in this action on the ground that NH & S is representing Marco in the subrogation action and, it argues, may not represent Marco's adversary in this case.

### Discussion

#### The Applicable Standard

■ Attorneys practicing in this Court must adhere to the Code of Professional Responsibility adopted by the Appellate Division of the New York Supreme Court.[14] Nevertheless, it does not follow necessarily that district courts should disqualify counsel whenever they perceive a breach of the canons. Disqualification motions are subject to abuse for tactical purposes. They may require sometimes complex satellite litigation extraneous to the case before the court. Disqualification also deprives a client of counsel of its choice. Moreover, professional disciplinary bodies, including the Grievance Committee of this Court, are available to police the behavior of counsel. Accordingly, the Second Circuit has made clear that disqualification is appropriate only if a violation of the Code

gives rise to a significant risk of trial taint.[15] That is to say, disqualification for an alleged conflict of interest is appropriate only if there is a significant risk that the conflict will affect the attorney's ability to represent his or her client with vigor or if the attorney is in a position to use privileged information acquired in his or her representation of a client against that client in another matter.[16]

Canon 5 of the Code states that "[a] lawyer should exercise independent professional judgment on behalf of a client," and Disciplinary Rule DR 5–105 proscribes a lawyer from representing a client if that representation is of interests differing from or adverse to those of another existing client. While the Second Circuit held in *Cinema 5, Ltd. v. Cinerama, Inc.*,[17] that it is improper *per se* for an attorney to participate in a lawsuit against his or her own client,[18] the court there dealt only with a situation in which the lawyer had traditional attorney-client relationships with both clients.[19] More recently, the circuit "has established alternative guidelines for a district court to follow ... depending on the particular facts of the case."[20]

This more flexible approach stems from *Glueck v. Jonathan Logan, Inc.*, where the circuit faced the question whether a law firm's suit against a member of an association which it represented implicated the standard of *Cinema 5, Ltd.* The court framed the inquiry as "whether there exist

10. Ans. ¶ 21.

11. Moore Aff. ¶ 10.

12. Cpt. ¶ 1.

13. Ans. ¶ 23.

14. *See* S.D.N.Y. CIV. R. §§ 1.3, 1.5(b)(5).

15. *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir.1981); *see also Evans v. Artek Systems Corp.*, 715 F.2d 788 (2d Cir. 1983).

16. *Board of Ed. of the City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir.1979).

17. 528 F.2d 1384 (2d Cir.1976).

18. *Id.* at 1387.

19. Plaintiff's counsel was a partner of two separate firms—one of which represented Cinema 5, Ltd. in the matter before the court, the other which represented Cinerama in an unrelated matter. There was no question that plaintiff's counsel—or his firm—was directly representing both plaintiff and defendant simultaneously.

20. *Hartford Accident & Indemnity Co. v. RJR Nabisco, Inc.*, 721 F.Supp. 534, 538 (S.D.N.Y. 1989) (Walker, J.); *Carro, Spanbock, Kaster, & Cuiffo v. Rinzler*, No. 88 Civ. 5280(MJL), 1992 WL 196758 (S.D.N.Y.1992).

sufficient aspects of an attorney-client relationship for purposes of triggering inquiry into the potential conflict involved."[21] The court answered this question in the negative, holding that (1) the association member was a client only in a vicarious sense, and (2) the "risks against which Canon 5 guards will not inevitably arise" in such a situation.[22] In those situations, a standard less stringent than *Cinema 5, Ltd.*'s *per se* test applies.

■ *Glueck* suggests the appropriate line of inquiry here. While Marco is a client of NH & S in the subrogation case in the sense that Marco nominally is the plaintiff for which NH & S appears, the Court is mindful that

> "[w]hen dealing with ethical principles, it is apparent that we cannot paint with broad strokes. The lines are fine and must be so marked. Guideposts can be established when virgin ground is being explored, and the conclusion in a particular case can be reached only after painstaking analysis of the facts and precise application of precedent."[23]

The basic question therefore is whether NH & S's role in the subrogation case is such that it should not sue Marco in this one.

Certainly Marco is neither a litigant nor a client of NH & S in the subrogation case in the usual sense. Under the terms of the policy, Marco was obligated to assign and subrogate to Commercial its right to prosecute and recover any claim against third parties responsible for the loss on which Commercial made payment. The subrogation case, although brought in Marco's name, is Commercial's alone. Marco has no material pecuniary or other interest in the subrogation suit.[24] Its role in the suit is limited to providing documents and testimony as required by the cooperation clause of the policy. Moreover, Marco did not retain NH & S to prosecute the suit, it pays none of NH & S's fees, and it has no control over the prosecution, settlement or dismissal of the matter. In consequence, NH & S represents Marco in the subrogation case only as a matter of form, and it cannot be said to stand in a traditional attorney-client relationship with Marco. As a matter of substance, NH & S's client in the subrogation case is Commercial.

■ Where, as here, the relationship between the client and the attorney it seeks to disqualify is so much more attenuated than in a conventional attorney-client relationship, the strict rule of *Cinema 5, Ltd.* does not apply.[25] "Disqualification will ordinarily be required whenever the subject matter of a suit is sufficiently related to the scope of the matters on which a firm represents [the adverse client] as to create a realistic risk either that the plaintiff will not be represented with vigor or that unfair advantage will be taken of the defendant."[26] These risks, however, are

---

21. *Glueck*, 653 F.2d at 748–49 (internal citations omitted).

22. *Id.* at 749.

23. *United States v. Standard Oil Company*, 136 F.Supp. 345, 367 (S.D.N.Y.1955) (Kaufman, J.) (citations omitted).

24. Marco's pecuniary interest is limited to a pro rata interest in the deductible from any recovery. Here this amounts to $4,000, Moore Aff. ¶ 2, n. 1, considerably less than the cost of the suit.

25. *See Hartford Accident & Indemnity Co.*, 721 F.Supp. at 539.
The Court notes also that even if NH & S's simultaneous representation of Marco and Commercial required application of the *per se* test, disqualification would not necessarily follow. In *Cinema 5, Ltd.*, the court held that once it has been established that the *per se* test is applicable, the burden shifts to the accused law firm to show that "there will be no actual or apparent conflict in loyalties or diminution in the vigor of his representation." *Cinema 5, Ltd.*, 528 F.2d at 1387. Adverse simultaneous representation alone, therefore, does not require disqualification in every case. For the reasons discussed *infra*, even the application of the *per se* test to this situation would not warrant disqualification of NH & S.

26. *Glueck*, 653 F.2d at 750; *see also Nyquist*, 590 F.2d at 1246.

not present here.

Defendant does not identify, and the Court cannot discern, any connection between the subrogation suit and this action. Although both involve the policy, the subrogation suit seeks recovery in respect of an entirely unrelated loss. Under the substantial relationship test, disqualification should be granted only "upon a showing that the relationship between the ... cases is 'patently clear' [or] 'essentially the same.' "[27] This showing has not been made.

Nor is there any other reason to suppose that Marco's interests would be disserved by permitting NH & S to represent Commercial in this case. Marco has no significant economic interest in the subrogation case, and the little interest it does have is coextensive with that of NH & S's client, Commercial. There is thus no risk that Marco's interest in that case will not be prosecuted with vigor.

Marco rejoins that its interests in this case could be jeopardized by its contractually compelled cooperation with NH & S in the subrogation case. It argues that Marco's duty to cooperate in the subrogation suit will force a Marco representative to be "alone in a room with and be[ ] prepared for testimony by an [NH & S] attorney."[28] It maintains also that there is a question "whether [its] attorney-client privilege will be respected."[29] But these arguments are unpersuasive. The lack of any substantial relationship between the subrogation case and this one means that nothing germane to the former is likely to be relevant to the latter. Moreover, Marco's obligation to cooperate with Commercial in the subrogation case means that it is obliged to disclose to Commercial anything reasonably related to the subrogation case irrespective of the identity of Commercial's counsel. Marco therefore has no reasonable expectation of privacy in anything relating to the subrogation claim.

Defendant relies on *Ettinger v. Cranberry Hill Corp* [30] for the proposition that NH & S's representation of it in the subrogation case is *per se* disqualifying. There, defendant Penn Hills Lodge sought to disqualify Ettinger's counsel, O'Malley, Harris & Schneider ("OH & S"), due to OH & S's attenuated representation of Penn Hills as subrogor in a claim against a third party. The court disqualified Ettinger's counsel upon the application of the *Cinema 5 Ltd. per se* test. *Ettinger*, however, is not persuasive here.

First, unlike Commercial's direct relationship to both the matter before this Court and the subrogation suit, Ettinger had no connection to the subrogation suit in which OH & S represented Penn Hill. Thus, the court legitimately was concerned that because "confidential records and accounts" were disclosed to OH & S by Penn Hill in the subrogation suit,[31] information might have passed through OH & S to Ettinger which had no right to it. But this concern is not present here because Commercial is the real party in interest. That is, Marco is obligated to disclose *to Commercial* anything reasonably related to the subrogation suit because of Marco's duty to cooperate with Commercial. There is therefore no concern that NH & S will act as a conduit for confidential information as was feared in *Ettinger*.

Second, while the *Ettinger* court predicated its holding on *Cinema 5 Ltd.*,[32] it did not consider *Glueck* which limited the *per se* test to situations of direct representation involving a traditional attorney-client relationship. Accordingly, even if *Ettinger* were on point, the Court respectfully would differ from its application here.

**27.** *Government of India v. Cook Industries, Inc.,* 569 F.2d 737, 739 (2d Cir.1978) (internal citations omitted).

**28.** Def. Mem. 9.

**29.** *Id.*

**30.** 665 F.Supp. 368 (M.D.Pa.1986).

**31.** *Id.* at 369.

**32.** *Id.* at 370.

*The Appearance of Impropriety*

Defendant maintains too that even the appearance of impropriety—discouraged by Canon 9—ought to be enough to disqualify NH & S from this action.[33] But in this circuit, "courts are reluctant to rest disqualification of counsel solely upon Canon 9."[34] This is because "[w]hile sensitive to the integrity of the bar, the public is also rightly concerned about the fairness and efficiency of the judicial process."[35] Any appearance of impropriety arising from NH & S's role in the subrogation suit therefore must be balanced against the fairness of depriving Commercial of its choice of counsel and the extent to which this motion to disqualify is motivated by litigation strategy.[36] And the scales tilt decisively in one direction.

While NH & S technically does represent Marco in the subrogation suit, only the most superficial understanding of the nature of the representation would permit the conclusion that there is any impropriety here. Any real familiarity with the facts would dispel any notion of a conflict of interest. Moreover, Commercial has a close and long-standing relationship with NH & S. Disqualification would result in added expense to Commercial and delay this litigation. Finally, in light of the lack of any material risk of trial taint resulting from NH & S's continued appearance in this matter, the Court is skeptical that this motion is anything more than a litigation tactic.

After weighing the countervailing concerns, this Court finds that the interests of fairness and efficiency would outweigh whatever minimal risk of appearance of impropriety there might be as a result of NH & S's continued representation of Commercial in the captioned matter.

**33.** Def. Reply Mem. 2 ("the *Ettinger* court was concerned primarily with the *appearance of impropriety* . . .").

**34.** *Hartford Accident & Indemnity,* 721 F.Supp. at 538.

**35.** *Armstrong v. McAlpin,* 625 F.2d 433, 445 (2d Cir.1980) (*in banc*), *vacated on other*

*Conclusion*

In the last analysis, defendant offers little reason, beyond empty formalism, why the Court should disqualify plaintiff's counsel, and the Court sees no reason to elevate formalism over the pragmatic concerns attendant to disqualifying Commercial's counsel.

SO ORDERED.

*grounds,* 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981).

**36.** *See, e.g., Nyquist,* 590 F.2d at 1246 (courts are reluctant to disqualify counsel because it deprives the client of his choice, and disqualification motions are often used for tactical purposes).