David **REED**, Appellant–Respondent,

v.

**HOOSIER HEALTH SYSTEMS, INC.,** Hoosier Living Centers, Inc, Stuart Reed, Michael Reed, and Partners Medical Management, Inc., Appellees–Petitioners.

**No. 49A04–0401–CV–42.**

Court of Appeals of Indiana.

April 13, 2005.

---

7. Coleman and Alliance did not appeal the summary judgment against them in No. 64D02–0207–PL–5727.

E. Scott Treadway, Kevin M. Quinn, Tabbert Hahn Earnest & Weddle, LLP, Indianapolis, IN, Attorneys for Appellant.

James H. Ham, III, Kathy L. Osborn, Dana M. Lenahan, Baker & Daniels, Indianapolis, IN, Attorneys for Appellees.

## OPINION

MATHIAS, Judge.

David Reed's ("Reed") attorneys were disqualified from representing him in Marion Superior Court. Reed brings this interlocutory appeal, raising the following restated issue for review: Whether the trial court abused its discretion when it disqualified Reed's attorneys. Concluding the trial court was within its discretion, we affirm.

### Facts and Procedural History

On January 26, 2001, Reed filed a complaint against Hoosier Health Systems, Inc. ("Hoosier Health"), Hoosier Living Centers, Inc. ("Hoosier Living"), Stuart Reed, and Michael Reed ("the Defendants"). Reed's complaint concerned a dispute among Hoosier Health and Hoosier Living's shareholders. David Shelton ("Shelton") and Scott Treadway ("Treadway") represented Reed.

On April 24, 2001, these litigants entered a division agreement and dismissed the complaint without prejudice. On January 4, 2002, Reed refiled his complaint. Shelton and Treadway once again represented Reed but had since relocated their practice to Tabbert Hahn Earnest & Weddle, LLP ("Tabbert Hahn").

The Defendants informed Shelton and Treadway they had a conflict arising from Tabbert Hahn's representation of Hoosier Health and Hoosier Living in pending suits that involve medical malpractice claims and that were assigned by the OHIC Insurance Company ("OHIC"), which indemnifies Hoosier Health and Hoosier Living.

On March 7, 2002, the Defendants filed a motion to disqualify Shelton and Treadway. On May 29, 2002, a hearing was held, in which Reed presented his 154–page response to the Defendants on the morning of the hearing.

At the conclusion of an October 7, 2002 evidentiary hearing, the trial court made the following entry:

Parties appear by counsel; Parties agree to continue HRG. Plaintiff to Submit Evidence on or before October 21, 2002. [The Defendants] to respond on

or before Nov. 10, 2002. If either party wants a hearing request to be made on or before Nov. 17, 2002. If no request for hearing by that date Court will decide issue based on submissions of the parties.

Appellees' App. p. 4. Reed did not request an additional evidentiary hearing.

On October 27, 2003, the trial court granted the Defendants' Motion to Disqualify. The trial court certified its order for interlocutory appeal on December 22, 2003, and this court 'has since acquired jurisdiction.

## Discussion and Decision

A trial court may disqualify an attorney for a violation of the Indiana Rules of Professional Conduct ("IRPC"). *Gerald v. Turnock Plumbing, Heating, & Cooling, LLC,* 768 N.E.2d 498, 501 (Ind.Ct. App.2002) (citing *Cincinnati Ins. Co. v. Wills,* 717 N.E.2d 151, 154 (Ind.1999)). The trial court's decision to disqualify an attorney is reviewed for an abuse of discretion. *Id.* (citing *Robertson v. Wittenmyer,* 736 N.E.2d 804, 806 (Ind.Ct.App. 2000)). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it or if it has misinterpreted the law. *State v. Willits,* 773 N.E.2d 808, 811 (Ind.2002).

IRPC 1.7(a) states in part:

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; *and*

(2) each client consents after consultation.

Ind. Prof. Cond. R. 1.7(a) (2004) (emphasis added). IRPC 1.10(a) states in part:

(a) While lawyers are associated in a firm, none of them shall represent a client if he knows or should know in the exercise of reasonable care and diligence that any one of them practicing alone would be prohibited from doings so by [Rule 1.7(a) ].

Ind. Prof. Cond. R. 1.10(a) (2004);[1] *see also Bethlehem Steel Corp. v. Sercon Corp.,* 654 N.E.2d 1163, 1170 (Ind.Ct.App. 1995), *trans. denied* ("[T]he duty of loyalty to a client extends to all members of a firm[.]").

IRPC 1.7(a) is violated in the case at bar because (1) Reed's Motion to Reinstate litigation specifically names Hoosier Health and Hoosier Living as defendants, (2) Tabbert Hahn represents Hoosier Health and Hoosier Living in ongoing litigation, and (3) there is no evidence of consent.

### A. *Relatedness*

Reed contends IRPC 1.7(a) does not necessitate disqualification because Tabbert Hahn's medical malpractice cases are unrelated to the case at bar. Br. of Appellant at 14. However, the relatedness of ongoing cases is not a relevant exception to IRPC 1.7(a). *See* Ind. Prof. Cond. R. 1.7(a) cmt. ("[A] lawyer ordinarily may not act as advocate against a person the lawyer represents in some other matter, even if it is wholly unrelated."); Geoffrey C. Hazard, Jr. & W. William Hodes, The Law of Lawyering § 1.7:203 at 233 (a lawyer should not sue a client on behalf of another present client, even if the lawyer

---

[1] Reed also contends IRPC 1.10(b) allows Shelton and Treadway to represent him. Br. of Appellant at 18. However, IRPC 1.10(b) involves *previous* representation and is irrelevant to the dispute at bar. Ind. Professional Conduct R. 1.10(b) (2004).

represents the first client in a wholly unrelated matter).

Reed contends IRPC 1.7(a)'s use of "directly" indicates there must be some relation between the suits before disqualification is proper. Reply Br. of Appellant at 8. However, IRPC 1.7(a)'s use of "directly" refers to the adverse effect to the client not the attorney-client relationship. Ind. Prof. Cond. R. 1.7(a). The attorney-client relationship is addressed in IRPC 1.7(a)(1), which does not contain the term "direct." *Id.* Hoosier Health and Hoosier Living, as named defendants, are adversely affected.

## B. *Withdrawal*

█ Reed contends there is no conflict because Tabbert Hahn offered to withdraw its representation of Hoosier Health and Hoosier Living. Br. of Appellant at 14 n. 3. However, conflicts may not be avoided by withdrawal.

*Universal City Studios, Inc. v. Reimerdes* states:

It is ... established law that an attorney cannot avoid disqualification ... merely by 'firing' the disfavored client ... and transforming a continuing relationship to a former relationship by way of client abandonment. Indeed, the offense inherent in taking on the conflicting representation is compounded by seeking to 'fire' the client in pursuit of the attorney's interest in taking on a new, more attractive, representation. If ... the act of suing one's client is a dramatic form of disloyalty, what might be said of trying to drop the first client in an effort to free the attorney to pursue his or her self-interest in taking on a

newer and more attractive professional engagement?

98 F.Supp.2d 449, 453 (S.D.N.Y.2000) (internal citations omitted).

## C. *Subrogation*

█ Reed cites *Commercial Union Insurance Co. v. Marco International Corporation,* 75 F.Supp.2d 108 (S.D.N.Y.1999), for the proposition that there is no attorney-client relationship under IRPC 1.7(a) where a party (1) did not engage the attorney, (2) has no pecuniary interest in the action, and (3) has no control over settlement of the case and claims the facts of this case satisfy this standard. Br. of Appellant at 15. However, *Commercial Union* involved subrogation rather than indemnification. 75 F.Supp.2d at 111. Tabbert Hahn is not pursuing a subrogation claim on behalf of OHIC; it is defending Hoosier Health and Hoosier Living in a disputed claim.

Reed contends subrogation is sufficiently analogous to indemnification because OHIC is really defending the claims and is financially responsible if its defense is unsuccessful. However, even assuming it is impossible for Hoosier Health and Hoosier Living to be held financially responsible for the claims represented by Tabbert Hahn, there are more consequences to losing a suit than simple pecuniary loss.[2]

Moreover, Reed's position is contrary to our supreme court's ruling in *Wills,* which stated:

Ultimately all attorneys are bound by their professional obligations *to place the interests of their policyholder-client ahead of their own* if pressure from an

---

**2.** Extending *Commercial Union* beyond subrogation would invite unwanted uncertainty as to when an attorney-client relationship exists for the purpose of IRPC 1.7(a). In subrogation, the insured has already sought compensation and stands in a fundamentally different position than one relying on indemnification. Indemnification raises a bevy of fact-sensitive issues regarding the client's interests.

employer or a co-client insurer conflicts with those of the policyholder.

717 N.E.2d at 163 (emphasis added).

### D. *The substantial relationship test*

In his Reply Brief, Reed urges this court to apply the "substantial relationship" test of *Gen–Cor, LLC v. Buckeye Corrugated, Inc.*, 111 F.Supp.2d 1049 (S.D.Ind.2000). Reply Br. of Appellant at 8–9. Reed does not cite *Gen–Cor* or assert entitlement to the substantial relationship test in his Appellant's Brief.

■ Appellate Rule 46(C) states, "no new issues shall be raised in the reply brief." Ind. Appellate Rule 46(C) (2004). Reed's decision to raise this issue in his Reply Brief—much like his decision to present a 154–page response to an opponent on the morning of a hearing—shields his argument from the scrutiny of his opponent and undermines the adversarial process. Accordingly, Reed has waived this issue for appellate review.

■ Waiver notwithstanding, we reject Reed's argument. *Gen–Cor* concluded the conflicted law firm violated IRPC 1.7(a) but disqualification was not an appropriate "remedy" under the substantial relationship test. 111 F.Supp.2d at 1053.

■ The substantial relationship test states:

First, the trial judge must make a factual reconstruction of the *prior* legal representation. Second, it must be determined whether it is reasonable to infer that the confidential information allegedly *given* would have been *given* to a lawyer representing clients in those matters. Third, it must be determined whether that information is relevant to the issues raised in the litigation pending against a *former* client.

*Gen–Cor*, 111 F.Supp.2d at 1054 (emphasis added).

The substantial relationship test is inapplicable to the case at bar. *Gen–Cor* speaks to conflicts involving former representation. Also, the application of the substantial relationship test to IRPC 1.7(a) would seem to violate the rule's clear language. IRPC 1.7(a) states, "a lawyer shall not represent a client;" it does not state "a lawyer shall represent a client unless ..."

■ *Gen–Cor* also concluded disqualification was not necessarily the "remedy" for a violation of IRPC 1.7(a). However, IRPC 1.7(a)'s use of "shall not" indicates the court need not determine the remedy for an on-going violation.[3] The express language of prohibition in IRPC 1.7(a) precludes the application of the substantial relationship test.[4]

---

**3.** The utility of a three-part, fact-specific test in this instance is questionable. Such a test creates a grey area regarding who may represent a client. It is fair to assert courts routinely adjudicate equally complex factual issues. However, by the time a court would reach this issue, much of the litigation expense and damage from the potentially defective representation would have already been done.

**4.** Reed notes, "Comment 15 to Rule 1.7 of the ABA Model Rule of Professional Conduct states that a conflict charged by an opposing party should be viewed with caution ... for it can be used as a technique for harassment."

Br. of Appellant at 13 n. 2. In his Reply Brief, Reed makes a two-page argument, suggesting his opponents are pursuing this matter for "tactical" reasons. Waiver aside, the above-cited comment refers to "harassment" not "tactical advantage." If moving to disqualify an attorney for a tactical advantage were not allowed, there would not be the hundreds of cases disqualifying attorneys—as litigants would not waste expenses if disqualification were not to their tactical advantage. Although we are not unmindful of Reed's claim and Judge Barnes' concern in this regard, "harassment" implies something more, which Reed has failed to establish.

## Conclusion

 The trial court did not abuse its discretion when it dismissed Reed's attorneys.[5]

Affirmed.

DARDEN, J., concurs.

BARNES, J., concurs in result with opinion.

BARNES, Judge, concurring in result with separate opinion.

Although I concur in result, I disagree with the majority's analysis of Tabbert Hahn's obligation to withdraw. The majority states that conflicts may not be avoided by withdrawal. I agree that there is the potential danger of lawyers dropping a client "like a hot potato" in favor of a more desirable client. *Universal City Studios, Inc. v. Reimerdes*, 98 F. Supp 2d. 449, 453 (S.D.N.Y.2000) (citation omitted). However, I believe withdrawal must be available to allow lawyers to remedy a conflict that arises after representation has been undertaken. This is in line with Comment 4 of Indiana Rule of Professional Conduct 1.7, which provides, "If a conflict arises after representation has been undertaken, the lawyer ordinarily must withdraw from the representation, unless the lawyer has obtained the informed consent...."

More importantly, however, I write separately to emphasize that this circumstance is one in which we must be wary. The disqualification of attorneys on conflict of interest grounds is a matter that is increasingly being done by members of the bar as a tactical device, in some instances with little to do with our professional ethics. In my opinion, allowing advocates to utilize motions to disqualify as purely strategic tools minimizes the importance of Indiana Rule of Professional Conduct 1.7(a) and it warnings, which are essential to the ability of lawyers to represent the best interests of their clients. Despite my concerns, however, I must concur given our standard of review in this case. I do not believe that the trial court's granting of the Defendant's motion to disqualify amounts to an abuse of discretion.

---

In his concurrence, Judge Barnes states, "I believe withdrawal must be available to allow lawyers to remedy a conflict that arises after representation has been undertaken." We agree that a lawyer should be allowed to withdraw to remedy a conflict, and under our holding, a lawyer *is* allowed to withdraw to remedy a conflict; the lawyer is only precluded from withdrawing from representation of the *former* client and having the opportunity to chose the more attractive client.

5. Reed also asserts the trial court abused its discretion by not affording him a full evidentiary hearing. However, the trial court's October 7, 2002 entry indicates it informed Reed he could receive such a hearing, and Reed failed to take advantage of the trial court's instruction. Appellees' App. p. 4.