**FOR PUBLICATION**



ATTORNEYS FOR APPELLANT:

**DAVID J. BEACH**
**MALLORY R. INSELBERG**
Eichhorn & Eichhorn, LLP
Hammond, Indiana

ATTORNEYS FOR APPELLEE:

**KEVIN P. McGOFF**
**KARL L. MULVANEY**
**ALEX E. GUDE**
Bingham Greenebaum Doll, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| XYZ, D.O., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 41A01-1402-CT-85 |
| | ) | |
| ROBIN SYKES and THOMAS WILLIAMS, | ) | |
| | ) | |
| Appellees-Plaintiffs, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ABC HOSPITAL, | ) | |
| | ) | |
| Defendant. | ) | |

APPEAL FROM THE JOHNSON SUPERIOR COURT
The Honorable Lance D. Hamner, Judge
Cause No. 41D03-1212-CT-156

**November 13, 2014**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

## Case Summary

XYZ, D.O. ("Doctor") brings an interlocutory appeal from the trial court's denial of his motion to disqualify attorney Michael S. Miller and the law firm of Montross, Miller, Muller, Mendelson & Kennedy (collectively "MMMMK") from representing Robin Sykes and Thomas Williams ("the Plaintiffs") in their suit for negligence and loss of consortium against Doctor and ABC Hospital ("the Hospital"). Doctor moved to disqualify MMMMK arguing that MMMMK has an imputed conflict of interest because one of its current employees, attorney Kathleen Clark, previously represented Doctor as his primary lawyer in six medical malpractice cases. Doctor asserts that the trial court abused its discretion in denying the motion to disqualify. We agree with Doctor and therefore reverse the trial court's decision and remand for further proceedings.

## Facts and Procedural History

The relevant facts indicate that Clark is an attorney currently employed at MMMMK. In 2003, prior to working at MMMMK, Clark maintained a practice as a civil defense attorney at her own law firm, Clark & Associates. It was during that time that Clark began her attorney-client relationship with Doctor after he was named as a defendant in the medical malpractice matter of *Timbrook v. XYZ, D.O., et al*. On June, 26, 2003, Clark entered her appearance as Doctor's sole attorney in that case. On August 1, 2003, Clark entered her appearance as Doctor's sole attorney in another medical malpractice case, *Couch v. XYZ, D.O., et al.* By May 2004, Clark had moved to the law firm of Eichhorn & Eichhorn, and she proceeded to represent and defend Doctor in *Timbrook* and *Couch*, as well as four additional

medical malpractice cases. In the course of her representations of Doctor, it was Clark's practice and routine to obtain Doctor's thoughts and mental impressions about each case, discuss and formulate discovery responses, and prepare Doctor for depositions. Clark's representation of Doctor concluded in April 2005, after she left her employment at Eichhorn & Eichhorn. In each of the six cases, a medical review panel eventually found in favor of Doctor.

Clark began her full-time employment at MMMMK in February 2010. Clark currently works as an "intake attorney," conducting initial interviews with potential clients to obtain case summaries and relevant information to determine if MMMMK will pursue representation. Tr. at 83. Clark prepares reports of the information she obtains regarding these potential cases and presents them at bimonthly meetings with other law firm members.

In the summer of 2012, Clark conducted the intake interview for the Plaintiffs' medical malpractice injury claim in this case. Clark recognized the name of the physician involved as that of Doctor, her former client whom she had represented and defended in multiple medical malpractice cases. Nevertheless, she obtained information from the Plaintiffs and later presented the summary of the Plaintiffs' claim during a firm meeting. Thereafter, MMMMK attorney Miller elected to take the case. MMMMK gathered the relevant medical records, and, at Miller's direction, Clark prepared a timeline of events for his review regarding the circumstances surrounding the Plaintiffs' injuries.

MMMMK filed a proposed complaint on behalf of the Plaintiffs with the Indiana Department of Insurance on August 15, 2012, and a complaint for damages against Doctor

3

and the Hospital in Johnson Superior Court on December 13, 2012. Count I of the complaint states a negligence claim against both Doctor and the Hospital, alleging that Doctor negligently performed spinal surgeries on Sykes and that the Hospital "negligently credentialed" Doctor with respect to those surgeries. Appellant's App. at 11. Count II of the complaint raises a loss of consortium claim on behalf of Williams.

In April 2013, Doctor's attorney sent a letter to MMMMK asserting that MMMMK had violated the Indiana Rules of Professional Conduct by representing Plaintiffs in this case and indicating that MMMMK should withdraw from representation. In response to that letter, on June 1, 2013, MMMMK implemented "internal security procedures" to screen Clark from participation in the case even though MMMMK believed that such a "screen was unnecessary under the circumstances." Tr. at 48-49. By this time, MMMMK had already represented Plaintiffs for approximately eleven months.

On June 27, 2013, Doctor filed a motion to disqualify MMMMK from representing the Plaintiffs in this case based upon Clark's prior six representations of Doctor and MMMMK's stated intent to rely, in part, on the medical malpractice cases in which Clark represented Doctor to prove its negligent credentialing claim. The Hospital joined in the motion to disqualify. Following a hearing, the trial court entered its order denying the motion. Doctor subsequently petitioned the trial court to certify its order for interlocutory

4

Appeal.[1]    The trial court granted that request, and this Court accepted jurisdiction. Additional facts will be provided in our discussion as necessary.

## Discussion and Decision

Doctor contends that the trial court abused its discretion when it denied his motion to disqualify MMMMK from representing the Plaintiffs in their case against Doctor and the Hospital. Specifically, Doctor argues that attorney Clark's prior representation of him in six medical malpractice cases creates a conflict of interest pursuant to Indiana Rule of Professional Conduct 1.9 that should be imputed to her new law firm, MMMMK, pursuant to Indiana Rule of Professional Conduct 1.10. MMMMK responds that the current matter is not substantially related to the prior representations, and therefore no conflict of interest is implicated. MMMMK maintains that even assuming a conflict exists, MMMMK has adequately rebutted any presumption in favor of disqualification. We will evaluate these assertions in turn.

Our supreme court has stated that a trial court may disqualify an attorney for a violation of the Indiana Rules of Professional Conduct that arises from the attorney's representation before the court. *Cincinnati Ins. Co. v. Willis*, 717 N.E.2d 151, 154 (Ind. 1999). This authority to disqualify "has been described as necessary to prevent 'insult and gross violations of decorum ….'" *Id*. We review a trial court's decision regarding disqualification for an abuse of discretion. *Reed v. Hoosier Health Sys., Inc.*, 825 N.E.2d

---

[1] We note that although the Hospital joined in Doctor's motion to disqualify, the Hospital does not join in this interlocutory appeal of the trial court's denial of the motion. We attach no significance to this decision by the Hospital.

408, 411 (Ind. 2005). "An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it or it has misinterpreted the law." *Id.*

This case involves the conflicts that arise and obligations that remain when lawyers move from one law firm to another. As we consider the duties owed to former clients by those who some have aptly described as "migratory lawyers,"[2] we look first to Indiana Professional Conduct Rule 1.9, which provides:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.
>
> (b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client
>
> > (1) whose interests are materially adverse to that person; and
> >
> > (2) about whom the lawyer has acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter; unless the former client gives informed consent, confirmed in writing.
>
> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
>
> > (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or

---

[2] *See* Donald R. Lundberg, *Migratory Lawyers and Other Exotic Species*, 49 RES GESTAE 27 (June 2006).

6

(2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

Professional Conduct Rule 1.10, which was substantially amended in 2005, entitled "Imputation of Conflicts of Interest: General Rule" provides in relevant part:

(c) When a lawyer becomes associated with a firm, no lawyer associated in the firm shall knowingly represent a person in a matter in which that lawyer is disqualified under Rule 1.9 unless:

(1) the personally disqualified lawyer did not have primary responsibility for the matter that causes the disqualification under Rule 1.9;

(2) the personally disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and

(3) written notice is promptly given to any affected former client to enable it to ascertain compliance with the provisions of this rule.

The above-cited language encompasses the basic principle that, except under very specific conditions, if an individual lawyer is personally disqualified from a client representation, his or her new law firm is also disqualified. In *Gerald v. Turnock Plumbing, Heating, & Cooling, LLC*., 768 N.E.2d 498, 502 (Ind. Ct. App. 2002), we were called upon to consider the issue of imputed disqualification due to the migration of lawyers between firms pursuant to Professional Conduct Rule 1.9 and the former version of Rule 1.10.[3] Consistent

---

[3] Formerly, Rule 1.10 read in pertinent part:
(b) When a lawyer becomes associated with a firm, the firm may not represent a person in the same or a substantially related matter if it knows or reasonably should know that that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(b) that is material to the matter.

with the principles espoused in our Rules of Professional Conduct, we adopted the three-step test used by the Seventh Circuit Court of Appeals in determining whether a migrating lawyer, and in turn that lawyer's new law firm, should be disqualified from a present representation due to a prior representation. *Gerald*, 768 N.E.2d at 503. We explained,

> First, we must determine whether a substantial relationship exists between the subject matter of the prior and present representations. If we conclude a substantial relationship does exist, we must next ascertain whether the presumption of shared confidences with respect to the prior representation has been rebutted. If we conclude this presumption has not been rebutted, we must then determine whether the presumption of shared confidences has been rebutted with respect to the present representation. Failure to rebut this presumption would also make disqualification proper.

*Id.* (quoting *Schiessle v. Stephens*, 717 F.2d 417, 420 (7th Cir. 1983)).

As for the first step of the test, we noted in *Gerald* that when defining what constitutes a substantially related matter within the context of Rule 1.9, our supreme court has "looked to the facts of a case to determine if the issues in the prior and present cases are 'essentially the same or are closely interwoven therewith.'" *Id.* (quoting *In re Robak*, 654 N.E.2d 731, 734 (Ind. 1995)). Comment 3 to Rule 1.9 provides further guidance and explains that matters are substantially related "if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter."

Although the parties vigorously disagree as to this issue, we believe that the prior and the present representations here are substantially related for the purposes of Rule 1.9. In her six prior representations of Doctor, Clark defended him against allegations of medical

8

malpractice. The present representation involves an allegation against Doctor for medical malpractice as well as an allegation against the Hospital for negligent credentialing, based in part upon the Hospital's alleged failure to adequately investigate the circumstances surrounding those six prior malpractice cases in which Clark represented Doctor.[4] Thus, the present case involves one claim of the same subject matter as Clark's prior representations of Doctor, and another claim that grew out of and is directly related to Clark's prior representations of Doctor. The issues in the prior and present cases are undoubtedly closely interwoven, and despite MMMMK's assertions to the contrary, there is a substantial risk that confidential factual information as would normally have been obtained in the prior representations would materially advance the Plaintiffs' position in the present case.

MMMMK argues that Rule 1.9 is inapplicable because the only claim in the present case that implicates Clark's prior representations of Doctor is the Plaintiffs' negligent credentialing claim against the Hospital, and that the Plaintiffs' interests are not materially adverse to Doctor's interests with regard to that claim since Doctor faces no monetary liability on that claim. First, we do not agree with MMMMK that a former client cannot have materially adverse interests in a matter merely because the former client does not necessarily face monetary liability. Moreover, we are unpersuaded by MMMMK's attempt to parse the current matter into separate unrelated claims against different defendants. One complaint was filed by one law firm in one legal forum. Indeed, both the medical malpractice claim

---

[4] We acknowledge that MMMMK indicated to the trial court that, in support of its negligent credentialing allegation, it planned to inquire regarding the Hospital's alleged failure to investigate twenty-four prior medical malpractice claims against Doctor.

and the negligent credentialing claim are contained in count I of the complaint. This is a single matter for purposes of Rule 1.9. The fact that Doctor and the Hospital, as codefendants, may have some independent interests at stake is not dispositive. Plaintiffs' interests are materially adverse to both defendants, and the defendants are united in terms of whether Clark, and in turn MMMMK, has a conflict of interest regarding the current representation of Plaintiffs in this single matter.

MMMMK also urges that the prior and present representations should not be considered substantially related because any information acquired during Clark's prior representations of Doctor, the last of which ended in 2005, has been rendered obsolete due to the passage of time. *See* Ind. Professional Conduct Rule 1.9, cmt. 3 ("Information acquired in a prior representation may have been rendered obsolete by the passage of time, a circumstance that may be relevant in determining whether two representations are substantially related."). This argument is unavailing. If the six prior medical malpractice cases remain relevant regarding the current allegation of negligent credentialing, as MMMMK admits, any confidential factual information gleaned during those prior representations can hardly be deemed stale or obsolete. As stated above, the present matter is substantially related to Clark's prior representations of Doctor.

Concluding that the prior and the present cases are substantially related, we proceed to the second step of the *Gerald* test, namely the rebuttable presumption that Clark in fact received confidential information from Doctor during her prior representations. *See Gerald*, 768 N.E.2d at 504. In other words, "we must determine whether the attorney whose change

10

of employment created the disqualification issue was actually privy to any confidential information [her] prior law firm received from the party now seeking disqualification of [her] present firm." *Schiessle*, 717 F.2d at 420. Here, MMMMK cannot and does not attempt to rebut this presumption. A conclusion as to whether a lawyer possesses such confidential information "may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services." Ind. Professional Conduct Rule 1.9, cmt. 3. It is undisputed that Clark was the primary and, at times, only attorney representing Doctor in each of those prior medical malpractice cases. As such, she was privy to much confidential information, including but not limited to Doctor's personal thoughts and mental impressions regarding the facts and circumstances and the strengths and weaknesses of those cases. The presumption of shared confidences in the prior representations has not been rebutted.

Accordingly, we turn to the final step of the imputed disqualification analysis in which "there is a rebuttable presumption that the knowledge possessed by one attorney in a law firm is shared with the other attorneys in the firm." *Gerald*, 768 N.E.2d at 505. In *Gerald*, we concluded that it was possible, under stringent circumstances, for a personally disqualified lawyer to be screened from a substantially related matter adverse to her former client in order to avoid imputation of her disqualification to the new firm. *Id.* Specifically, we stated that the presumption of shared confidences could be rebutted by a demonstration that "Fire

11

Walls" were implemented to effectively insulate against any flow of confidential information from the "infected attorney" to any member of her present law firm. *Id.*[5]

Our supreme court agreed with this possibility for effective screening when it amended Rule 1.10 in 2005 to specify conditions that a migrating lawyer and her new law firm must meet to avoid imputed disqualification, including timely screening from the matter, fee exclusion, and written notice to the former client. *See* Ind. Professional Conduct Rule 1.10(c). However, the amended rule makes clear that imputed disqualification is per se and screening is not possible in cases where the personally disqualified lawyer had "primary responsibility" for the prior "matter that causes the disqualification." Ind. Professional Conduct Rule 1.10(c)(1). Here, because Clark was Doctor's primary, and at times, only lawyer in the six prior medical malpractice cases, she cannot be screened to avoid imputation of the conflict to MMMMK. Under such circumstances, the presumption of shared confidences within the new law firm becomes irrebuttable. Consequently, Clark's personal disqualification from this matter must be imputed to MMMMK.[6]

---

[5] Indeed, we encouraged migrating lawyers and their new law firms to institute some type of procedure to catalogue prior representations so that, when migration occurs, "timely Fire Walls can be erected and the migrating lawyers do not blindly infect their new offices." *Gerald*, 768 N.E.2d at 505, n.4.

[6] We note that even if Clark did not have primary responsibility for Doctor's prior representations and that effective screening was a possibility, the screening procedures employed by MMMMK here, which occurred eleven months into the current representation, were untimely and would have been insufficient to avoid imputed disqualification. *See* Ind. Rule of Professional Conduct 1.0(k) (defining "screened" as "the isolation of a lawyer from any participation in a matter through the timely imposition of procedures within a firm that are reasonably adequate under the circumstances to protect information that the isolated lawyer is obligated to protect under these Rules or other law.").

We emphasize to the parties that we recognize that the imputed disqualification of an entire law firm is a serious penalty and that we do not make our decision lightly. That said, we must be cognizant that "public trust in the integrity of the judicial process requires that any serious doubt be resolved in favor of disqualification." *Robertson v. Wittenmyer*, 736 N.E.2d 804, 806 (Ind. Ct. App. 2000). This case squarely raises such serious doubt. Therefore, we are constrained to conclude that the trial court abused its discretion in denying Doctor's motion to disqualify MMMMK. The trial court's interlocutory order is reversed, and this case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

BAKER, J., and MATHIAS, J., concur.